# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON
## DIVISION ONE

STATE OF WASHINGTON,      )      No. 69732-3-I
                                  )
           Respondent,     )
                                  )
      v.                           )
                                  )      ORDER GRANTING MOTION
VERNON MAURICE WALKER,    )      FOR RECONSIDERATION,
                                  )      WITHDRAWING AND REPLACING
           Appellant.      )      OPINION
                                  )
_____)

A motion for reconsideration was filed by respondent, State of Washington asking the court to reconsider the published opinion filed in this case on December 8, 2014. The panel has considered the motion and determined it should be granted.

Now, therefore, it is hereby

ORDERED that the motion for reconsideration is granted and the opinion of this court filed December 8, 2014 is withdrawn and replaced with a revised opinion.

SO ORDERED,

Dated this 9th day of February, 2015.

FOR THE COURT:

_Spearman, C.J._

_Becker, J._

_Leach, J._

# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 69732-3-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| VERNON WALKER, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: February 9, 2015 |

SPEARMAN, C.J. — Vernon Walker pleaded guilty to one count of murder in the second degree and one count of assault in the second degree arising from a 2003 shooting. At his sentencing hearing, jail security officers transported him to court wearing handcuffs and leg restraints. The trial court denied Walker's motion for an order removing the handcuffs for the hearing. On appeal, Walker argues that the denial of his motion violated his constitutional right to appear before the court free of physical restraint. He also contends the error was not harmless and he is entitled to a new sentencing hearing. We affirm.

## FACTS

On June 25, 2003, Vernon Walker shot and killed Darreion Roche. He also fired shots at another man, Quency Cummings-Williams. Five days later, the State charged Walker with murder in the first degree and assault in the first

degree. Before Walker could be arrested on these charges, he fled to Canada. When apprehended there, he contested extradition for over seven years. He was eventually returned to King County where he pleaded guilty to amended charges of murder in the second degree and assault in the second degree. Before sentencing, Walker noted a motion to appear at the sentencing proceeding unshackled, on the grounds that it would be "very prejudicial" for him to appear before the sentencing judge in restraints. Verbatim Report of Proceedings (VRP) (10/26/12) at 9.

The King County Department of Adult and Juvenile Detention (DAJD) filed a brief in opposition to the motion, which was supported by a declaration from Corinna Hyatt, the facility major for the King County Correctional facility and an employee of the DAJD. Hyatt's declaration detailed Walker's violent criminal history, his documented gang affiliation, his lengthy attempt to fight extradition in the present case, and his various admitted infractions for violence and other misconduct in the jail. Hyatt acknowledged that there was no evidence that Walker had a present plan to escape. She also did not allege that Walker had previously engaged in any misconduct in court or in transport to or from the courtroom. The State deferred to the DAJD on the issue of restraints.

On November 9, 2012, the judge heard argument on Walker's motion. Walker argued he had a constitutional right to appear in court free from restraints, regardless of whether a jury was present, and that there was no factual basis to support his shackling. He contended that because he had no

history of disrupting court proceedings or attempting to escape from the courtroom, there was no reason to believe that he would do so at his sentencing hearing. He argued that the DAJD's claims otherwise were speculative. Walker also asserted that restraints would dehumanize him and prejudice the sentencing judge.

In response, the DAJD first argued that under the separation of powers doctrine the question of whether and how Walker should be restrained in the courtroom was solely within the discretion of DAJD. It also contended that Walker's constitutional right to appear free from restraint applied only when a jury was present, and that judges are presumed not to be prejudiced by a defendant's appearance in restraints. Lastly, the DAJD argued that Walker's violent criminal history, his misconduct in jail, his gang affiliation, and his history of eluding law enforcement, justified the use of restraints on him during court proceedings.

The trial court concluded that, while it was "not prohibited from exercising some authority over security, the Court, any court, is wise to take into account the judgment and the information that's available to the Department of Adult and Juvenile Detention." VRP (11/9/12) at 10. The judge denied Walker's motion, finding "ample reason" for keeping Walker restrained during sentencing. VRP (11/9/12) at 11.

At the December 11, 2012, sentencing hearing, Walker renewed his objection to appearing in restraints. The court overruled the objection and

3

sentenced him to a standard-range sentence of 270 months of confinement on the murder charge and forty-three months on the assault charge, to run concurrently.[1] This sentence fell below the top, but above the midpoint of the standard range, and was two years less than the sentence recommended by the State. Walker appeals the sentence.

## DISCUSSION

It is well settled that in a proceeding before a jury a criminal defendant has a constitutional right to appear free from restraints or shackles of any kind. In State v. Williams, 18 Wash. 47, 50 P. 580 (1897), the defendant's conviction for burglary was reversed because the trial court, without justification, denied the defendant's motion that he and his witnesses be unmanacled before the jury during the trial. The court cited article 1, section 22 of the Washington State Constitution which provides "In criminal prosecutions the accused shall have the right to appear and defend in person," and stated:

> The right here declared is to appear with the use of not only his mental but his physical faculties unfettered, and unless some impelling necessity demands the restraint of a prisoner to secure the safety of others and his own custody, the binding of the prisoner in irons is a plain violation of the constitutional guaranty.

Id. at 51.

---

[1] Based on Walker's offender score of six, the presumptive sentence range was 195 to 295 months of confinement on the murder charge and thirty-three to forty-three months on the assault. As part of the plea agreement, Walker agreed not to seek an exceptional sentence downward. He recommended a sentence at the bottom of the standard range. The State recommended a sentence at the top of the standard range.

Although, the right found in Williams, was in the context of a jury trial, the court did not expressly limit application of that right to proceedings in which a jury was present. The court cited the rule at common law that not only is a defendant entitled to be free of shackles at trial, "prior to 1722, when a prisoner was arraigned or appeared at the bar of the court to plead, he was presented without manacles or bonds, unless there was evident danger of his escape." Id. at 49. The court further noted that the common law of England was "expressly adopted by legislative enactment at the first session of the legislative assembly of this territory, and there is no doubt that the ancient right of one accused of crime under an indictment or information to appear in court unfettered, is still preserved in all its original vigor in this state." Id. at 50.

Many subsequent cases, in Washington and other jurisdictions, have addressed the right to appear in court free of physical restraint, but nearly all have addressed the right in the context of a jury trial. See State v. Finch, 137 Wn.2d 792, 842-43, 975 P.2d 967 (1999) and cases cited therein.[2] Walker asks

---

[2] Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970); State v. Hartzog, 96 Wn.2d 383, 635 P.2d 694 (1981); State v. Ollison, 68 Wn.2d 65, 411 P.2d 419 (1966); State v. Sawyer, 60 Wn.2d 83, 371 P.2d 932 (1962); State v. Williams, 18 Wash. 47, 50 P. 580 (1897); State v. Tolley, 290 N.C. 349, 226 S.E.2d 353 (1976); Snow v. Oklahoma, 489 F.2d 278 (10th Cir.1973); Kennedy v. Cardwell, 487 F.2d 101 (6th Cir.1973); United States ex rel. Stahl v. Henderson, 472 F.2d 556 (5th Cir.1973); United States v. Roustio, 455 F.3d 366 (7th Cir.1972); Dorman v. United States, 435 F.2d 385 (D.C.Cir. 1970); United States v. Thompson, 432 F.2d 997 (4th Cir.1970); United States v. Samuel, 431 F.2d 610 (4th Cir.1970); Loux v. United States, 389 F.2d 911 (9th Cir.1968); Blaie v. United States, 136 F.2d 284 (D.C.Cir.1943); People v. Thomas, 1 Mich.App. 118, 134 N.W.2d 352 (1965); Commonwealth v. Brown, 364 Mass. 471, 305 N.E.2d 830 (1973); State v. Borman, 529 S.W.2d 192 (Mo.App.1975); State v. Roberts, 86 N.J.Super. 159, 206 A.2d 200 (1965); French v. State, 377 P.2d 501 (Okla.Crim.App.1962); Commwealth v. Cruz, 226 Pa.Super. 241, 311 A.2d 691 (1973); Thompson v. State, 514 S.W.2d 275 (Tex.Crim.App.1974); Sparkman v. State, 27 Wis.2d 92, 133 N.W.2d 776 (1965).

us to expressly extend the right to include appearances at all court proceedings, regardless of whether a jury is present.

As an initial matter we address the DAJD's argument below that, under the separation of powers doctrine, it has sole discretion to determine whether and in what manner an inmate may be required to appear before the court in restraints.[3] The DAJD argued that prison administrators have plenary authority to determine whether an inmate defendant must wear restraints in the courtroom. In support of this position, it cites Thornburgh v. Abbott, 490 U.S. 401, 409, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989); Turner v. Safley, 482 U.S. 78, 97, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); and Bell v. Wolfish, 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). These cases hold only that courts generally accord prison administrators wide deference in the adoption and execution of policies and practices which are necessary to preserve order, discipline, and security within penal institutions. See e.g. Thornburgh, 490 U.S. at 413 (holding that prison administrator's rules and regulations affecting the sending of publications to prisoners are generally valid if they are "'reasonably related to legitimate penological interests.'") (Quoting Turner, 482 U.S. at 89). But the issue before us is whether to accord similar deference to the decisions of prison administrators regarding the use of restraints on an inmate defendant once the defendant is in the courtroom.

---

[3] Although the State does not make this argument on appeal, we address it to make clear the trial court's authority to determine the manner in which an in-custody defendant appears before it.

The interests of prison administrators in the security of their institutions and the resulting decision to use restraints are readily distinguishable from the interests of the court. To be sure, on matters of courtroom security, those interests may overlap because of common concerns about preventing injury to those in the courtroom, preventing disorderly conduct in the courtroom, and preventing escape. Finch, 137 Wn.2d at 846; Hartzog, 96 Wn. 2d at 398. But, unlike in a penal setting, a court is also required to balance the need for a secure courtroom with the defendant's presumption of innocence, ability to assist counsel, the right to testify in one's own behalf, and the dignity of the judicial process. Finch, at 844-45. While prison officials may be well positioned to assist the trial court in deciding matters of courtroom security, they are in no position to weigh and balance the many factors the court must consider when determining whether, and in what manner a defendant should be restrained during a court proceeding. We hold that regardless of the nature of the court proceeding or whether a jury is present, it is particularly within the province of the trial court to determine whether and in what manner, shackles or other restraints should be used.

Next, we consider Walker's claim that he has a right under the Washington State constitution to appear for sentencing free from restraints. Because no case expressly finds such a right in the Washington constitution, Walker relies primarily on California cases as persuasive authority in support of

his claim.[4] But even if we were to follow the cited cases and find such a right under our state constitution, we conclude that Walker would not be entitled to the relief he seeks.

In People v. Fierro, 1 Cal.4th 173, 821 P.2d 1302 (1991), the defendant was sentenced to death after being convicted by a jury of first degree murder and two counts of robbery. The defendant appeared in handcuffs and shackles for a preliminary hearing without a jury at which he was identified as the assailant by an eyewitness. Prior to the hearing, the defendant moved to have the restraints removed. The trial court summarily denied the motion. On appeal to the California Supreme Court, the defendant argued for reversal of his conviction because, among other reasons, the trial court's refusal to remove the restraints during the preliminary hearing prejudicially tainted the witnesses' identification of him as the perpetrator.

The Fierro court agreed that, absent a showing of "'evident necessity,'" a defendant has the right to appear at all court proceedings, including non-jury proceedings, unencumbered by physical restraints. Id. at 219-220. The court noted that at least since 1871, California courts had identified reasons to prohibit

---

[4] Walker also cites People v. Boose, 66 Ill.2d 261, 362 N.E.2d 303 (1977) in support of his argument. In that case, the Illinois Supreme Court prohibited shackling a defendant in a competency hearing absent finding a strong necessity for doing so. But, as the State points out, the competency proceeding at issue was before a jury. In addition, subsequent to Boose the Illinois Supreme Court adopted ILCS S. Ct. Rule 430 which provides that the general rule against restraints without judicial findings is "limited to trial proceedings in which the defendant's innocence or guilt is to be determined, and does not apply to bond hearings or other instances where the defendant may be required to appear before the court prior to a trial being commenced."

the unjustified use of restraints in the courtroom that went well beyond the issue of prejudicing the defendant in the eyes of the jury.[5] In People v. Harrington, 42 Cal. 165, 168 (1871), the court observed that the use of restraints "without evident necessity ... inevitably tends to confuse and embarrass [the accused's] mental faculties, and thereby materially to abridge and prejudicially affect his constitutional rights of defense." In People v. Duran, 16 Cal.3d 282, 290, 545 P.2d 1322 (1976), the court found the unjustified use of restraints was an "affront to human dignity" and showed "disrespect for the entire judicial system." In Solomon v. Superior Court of Los Angeles County, 122 Cal.App.3d 532, 536, 177 Cal.Rptr. 1 (1981), the court noted that "[a]lthough the Duran opinion was written in the context of a jury trial it has application to other proceedings as well. Respect for the dignity of the individual and the court are values to be preserved whether or not a jury is present." Relying on these cases, the Fierro court

---

[5] We note that the U.S. Supreme Court and the Washington State Supreme Court have also acknowledged that the unjustified use of shackling undermines important values beyond the concern for jury prejudice. See Deck v. Missouri, 544 U.S. 622, 631, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005):

> The courtroom's formal dignity, which includes the respectful treatment of defendants, reflects the importance of the matter at issue, guilt or innocence, and the gravity with which Americans consider any deprivation of an individual's liberty through criminal punishment. And it reflects a seriousness of purpose that helps to explain the judicial system's power to inspire the confidence and to affect the behavior of a general public whose demands for justice our courts seek to serve. The routine use of shackles in the presence of juries would undermine these symbolic yet concrete objectives.

See also Finch, 137 Wn.2d at 845 ("Shackling or handcuffing a defendant has also been discouraged because it restricts the defendant's ability to assist his counsel during trial, it interferes with the right to testify in one's own behalf, and it offends the dignity of the judicial process.") (Citing Allen, 397 U.S. at 344); State v. Damon, 144 Wn.2d 686, 691, 25 P.3d 418 (2001) ("keeping the defendant in restraints during trial may deprive him of the full use of all his faculties.") (Citing State v. Williams, 18 Wash. 47, 50 P. 580 (1827)).

concluded that the rule of "evident necessity" for the use of restraints, first enunciated in Harrington in the context of a jury trial, was applicable to all court proceedings. The court stated that the rule:

> Serves not merely to insulate the jury from prejudice, but to maintain the composure and dignity of the individual accused, and to preserve respect for the judicial system as a whole; these are paramount values to be preserved irrespective of whether a jury is present during the proceeding. Accordingly, we hold that, as at trial, shackling should not be employed at a preliminary hearing absent some showing of necessity for their use.

Id. at 219-20.

Significantly, while the Fierro court acknowledged the dangers of unwarranted shackling at the preliminary hearing, it also observed that because in the absence of a jury the dangers are not as substantial as those presented at trial "a lesser showing than that required at trial is appropriate." Id. Thus, even if we were to follow Fierro, the issue presented here is whether the record in this case is sufficient to meet that "lesser showing."

Unlike in Fierro, here the trial court did not summarily deny the defendant's motion. Instead after a full hearing, the trial court determined that under the circumstances Walker should remain restrained during the sentencing proceeding. The question before us is whether, in light of the "lesser showing" required under Fierro, the trial court abused its discretion when it denied Walker's motion.[6] Finch, 137 Wn.2d at 846. An abuse of discretion occurs when the

---

[6] California courts also review the decision to restrain a defendant during court proceedings for abuse of discretion. Duran, 16 Cal.3d at 292-93.

discretion is exercised on untenable grounds. A discretionary decision rests on untenable grounds if it is unsupported by the facts in the record. Mayer v. STO Industries, Inc., 156 Wn.2d 677, 684, 132 P.3d 115 (2006).

A defendant's right to appear in court free from restraints is not unlimited. Finch, 137 Wn.2d at 846. The right may yield in the interest of courtroom safety, security, and decorum.[7] Id. Restraints are permissible if necessary to prevent injury to persons in the courtroom, disorderly conduct at trial, or escape. Id.; Hartzog, 96 Wn.2d at 398. But a trial court should allow the use of restraints only after conducting a hearing and entering findings into the record that are sufficient to justify their use on a particular defendant. Damon, at 691-92; Hartzog, at 400. A decision to restrain a defendant "must be founded upon a factual basis set forth in the record." Id.

Walker argues that the trial court erred because it failed to exercise its discretion, and instead "abdicat[ed] its responsibility in favor of the jail staff's conclusion that Mr. Walker behaved poorly while in jail" and should, therefore, be shackled. Brief of Appellant at 11. The record does not support this argument. The record shows that the trial court considered the evidence submitted and listened to the arguments of both parties before rendering its decision on whether Walker should be unshackled during his sentencing. Walker relies on Hartzog to support his argument otherwise, but the reliance is misplaced.

---

[7] California law on this issue is in accord. Duran, 16 Cal.3d at 290-91.

11

In Hartzog, 96 Wn.2d at 387, a Walla Walla Superior Court judge issued a blanket security order that all Walla Walla inmate defendants appearing in superior court were required to wear physical restraints.[8] The order was issued after a corrections officer working in the courthouse was severely injured by a cigarette lighter, which had been turned into a small bomb and secreted into the courthouse by prison inmates. Id. The order applied without regard to individual inmates' prior behavior and solely on the basis of their status as inmates at the Walla Walla penitentiary.

On appeal, our Supreme Court concluded that the blanket security order was invalid because it was based on the "general conditions at the [petitioner's] place of confinement," not on factors "shown directly attributable to petitioner." Id. at 399. The Court identified several factors a trial court should consider in assessing whether a defendant should be restrained in the presence of a jury:

> [T]he seriousness of the present charge against the defendant;
> defendant's temperament and character; his age and physical
> attributes; his past record; past escapes or attempted escapes,
> and evidence of a present plan to escape; threats to harm
> others or cause a disturbance; self-destructive tendencies; the
> risk of mob violence or of attempted revenge by others; the
> possibility of rescue by other offenders still at large; the size
> and mood of the audience; the nature and physical security of
> the courtroom; and the adequacy and availability of alternative
> remedies.

Id. at 400.

---

[8] The policy also required inmates to be searched at the penitentiary before departure, subjected to a skin and probe search upon arrival at the Walla Walla County Jail, and seated away from counsel table during trial. Id.

Hartzog is of no help to Walker because here, there was no blanket order applicable to all inmates based solely on their status as inmates. Instead, the trial court's decision was based on evidence that related to Walker's unique circumstances. Moreover, in reaching its conclusion that restraints were warranted in this case the trial court took into account appropriate factors suggested in Hartzog. The trial court considered that Walker had plead guilty to murder and felony assault in the current case, and had convictions of other violent crimes in the United States and Canada. The court also considered evidence that Walker was affiliated with a street gang in King County, had been involved in fights during his detention in Canada, and while awaiting trial in the King County Jail, he had fought with one inmate and displayed threatening behavior toward others. The court also took into account Walker's history of flight and his ability to access resources in the community that might aid a future escape.

While this showing may be insufficient to justify shackling a defendant in the presence of the jury, in light of the lesser showing required under Fierro in a non-jury setting, the evidence before the trial court was more than adequate to support its decision to use restraints. We conclude that the court properly exercised its discretion after hearing from the interested parties and considering factors related to Walker's unique circumstances.

Walker also argues that the use of shackles "infringes on the defendant's right to counsel in that it interferes with the defendant's ability to communicate

13

with his lawyer." Brief of Appellant at 7. Walker is correct that courts have recognized the use of restraints at sentencing may impair a defendant's ability to communicate with his attorney. See Deck, 544 U.S. at 631; United States v. Cooper, 591 F.3d 582, 588 (7th Cir. 2010) (restraints could potentially impede access to defense counsel); Damon, 144 Wn.2d at 691 (restraints may affect the right to confer with counsel during a trial); Finch, 137 Wn.2d at 845 (restraints restrict the defendant's ability to assist his counsel); Fierro, 1 Cal.4th at 220 ("the unjustified use of restraints could, in a real sense, impair the ability of the defendant to communicate effectively with counsel.") (Citing Harrington, 42 Cal at 168). But, Walker fails to point to any evidence in the record that the restraints used in this case interfered in any way with his ability to communicate with his lawyer. Absent such a showing, we cannot conclude that shackling impaired Walker's ability to assist or communicate with defense counsel.

We hold that it was within the trial court's sole discretion to determine whether Walker should be restrained during his sentencing hearing. We also hold that the record was sufficient to support the trial court's decision to maintain Walker's restraints during the hearing and does not show that Walker was prejudiced thereby. Furthermore, even if we were to follow Fierro, as Walker requests, on this record the trial court's denial of Walker's motion to remove the restraints was not an abuse of discretion.

No. 69732-3-I/15

Affirmed.

_Specimen, C.J._

WE CONCUR:

_Leach, J._          _Becker, J._