# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 75034-8-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| KYLE STODDARD, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: June 13, 2016 |

SPEARMAN, J. — Kyle Stoddard was convicted of custodial assault against three corrections officers. He appeals, arguing that the trial court deprived him of a fair trial by requiring him to wear an electric shock restraint during trial and by placing two prison guards near him in the courtroom. Stoddard also argues that one of his assault convictions must be overturned because the evidence for that charge was insufficient. Finding no error, we affirm.

## FACTS

Stoddard was an inmate at a corrections center. During a meal, Stoddard violated the center's rules by moving to another table, refusing to return to his seat, and putting food in his pockets. Corrections Officer Torey Casey directed Stoddard to leave the dining hall. Stoddard threw his tray on the ground, approached Casey, and told him he would "kick [his] fucking ass." Verbatim Report of Proceedings (VRP) (10/30/14) at 30.

Two corrections officers who were outside the dining hall, William Lane and Roland Daniels, heard Casey radio for help. Lane entered the hall to assist while Daniels remained by the doors to block Stoddard from exiting. Daniels observed the incident through the glass of the door.

Lane approached Stoddard and Casey. Stoddard threatened Lane and approached him with his fists clenched. Casey used pepper spray on Stoddard. Lane stated that he tried to grab Stoddard but Stoddard evaded him and "charged" toward the door. VRP (10/30/14) at 47.

Daniels stated that he saw Stoddard coming toward the door. Daniels realized that he did not have time to lock the door, so he put his shoulder against it to slow Stoddard's exit. Stoddard forcefully ran into the door and the impact caused Daniels to fall.

Casey and Lane tried to restrain Stoddard. According to the officers, Stoddard ignored instructions to stop and continued to swing at them. Daniels eventually brought Stoddard under control by causing him to fall. Stoddard was stunned or unconscious for a moment, then continued trying to hit Daniels.

According to Stoddard, after he was pepper sprayed, he was scared, panicked, and anxious and only wanted to get away. He stated that because of the pepper spray he could not see well and did not see Daniels standing outside the door. Stoddard denied throwing punches once he was outside and stated that he was only trying to get away from the confrontation.

Stoddard was charged with three counts of custodial assault. While awaiting trial, the court granted Stoddard's request to be housed temporarily at

2

the Grays Harbor County Jail in order to facilitate attorney-client communication. The court instructed Stoddard to be a "perfect gentleman" and specifically instructed him not to assault any officers. VRP (6/23/14) at 6-7. Stoddard replied "Yes sir." VRP (6/23/14) at 7.

While at the county jail, Stoddard allegedly assaulted a deputy sheriff and broke his jaw. Stoddard also allegedly stated that it was his goal to hospitalize at least one staff member from every correctional center in which he was incarcerated.

In its pretrial brief, the State noted that Stoddard had five prior convictions for assaulting police. The State explained that, due to Stoddard's alleged assault of the Grays Harbor officer, he was "not welcome" to be housed at the Grays Harbor jail or any other nearby jail for trial. Clerk's Papers (CP) at 35. The State anticipated that the Department of Corrections (DOC) would use a "special extraction team" to transport Stoddard to court and fit him with an electric shock harness worn under clothes for trial. The State noted that Stoddard had never "acted out" in the courtrooms at Grays Harbor jail. Id. Defense counsel did not move to remove Stoddard's restraints or request a hearing on the issue.

At a pretrial hearing, the court inquired about security measures. The State explained that its understanding was that DOC would restrain Stoddard using an electric shock harness that would be worn under Stoddard's clothes. The trial court confirmed that this device would not be visible to the jury. The court instructed Stoddard that it expected him to "conduct [himself] appropriately" and that if he did not "we will take appropriate steps to make sure that the

3

courtroom is secure." VRP (10/27/14) at 8. Stoddard replied "Yes, sir." VRP 10/27/14 at 7-8. Defense counsel did not object or move to remove restraints at trial.

On the day of the trial, outside the presence of the jury, the court addressed the parties about security measures. The court stated that it had learned that morning from a corrections officer that Stoddard was fitted with an electric shock device under his clothing on the lower part of one leg. If activated, the device would make it difficult for Stoddard to fully use that leg but would not incapacitate Stoddard. The court stated that it had decided to move counsel table to allow room for two security officers to stand or sit behind Stoddard. The court stated that it made this decision after considering the nature of the charge against Stoddard, the alleged assault at the Grays Harbor jail, and the alleged threats to injure other law enforcement officers. The court also stated that the risk of prejudice was low given that, because of the nature of the charges, the jury would necessarily be informed that Stoddard was an inmate in a correctional facility.

Defense counsel objected that the presence of security officers was prejudicial. Counsel also objected that the presence of officers behind counsel table violated Stoddard's right to confidential communication with his attorney. After inquiring whether the officers were able to hear communications between Stoddard and his attorney and receiving a negative reply, the court ruled that there was sufficient distance for Stoddard to communicate with his attorney in confidence.

Stoddard was convicted as charged. He appeals.

## DISCUSSION

Stoddard first argues that the trial court violated his right to a fair trial by requiring him to wear an electric shock device and placing security guards near counsel table. The trial court has discretion to determine whether a defendant should be restrained in court. State v. Walker, 185 Wn. App. 790, 799-80, 344 P.3d 227, rev. denied, 183 Wn.2d 1025, 355 P.3d 1154 (2015). In making this decision, the trial court must "balance the need for a secure courtroom with the defendant's presumption of innocence, ability to assist counsel, the right to testify in one's own behalf, and the dignity of the judicial process." Id. at 796 (quoting State v. Finch, 137 Wn.2d 792, 842-45, 975 P.2d 967 (1999)).

The court may consider factors such as the seriousness of the present charge, the defendant's past record, the defendant's behavior in court, threats to harm others, past escape attempts or evidence of current plans to escape, and the nature of the courtroom. State v. Damon, 144 Wn.2d 686, 691-92, 25 P.3d 418 (2001) (citing Finch, 137 Wn.2d at 848). The trial court should hold a hearing and enter findings of fact before allowing the use of restraints. Id. Prison officials "may be well positioned to assist the trial court in deciding matters of courtroom security. . . ." Walker, 185 Wn. App. at 797. But it is an abuse of discretion for the trial court to impose restraints based solely on a request by a correctional officer. Damon, 144 Wn.2d at 692.

Stoddard urges us to find that the trial court abused its discretion because it imposed restraints based on the ex parte request of a corrections officer.

5

Stoddard asserts that he had a history of exemplary courtroom behavior and there was no basis for the trial court to impose restraints.

Stoddard's argument is without merit. In determining what security measures to impose, the trial court properly weighed a number of factors. The court considered the present charge against Stoddard, which concerned assaulting law enforcement officers and trying to flee from them. The court also considered separate pending charges for assaulting a law enforcement officer and reports of threats to harm others. The court weighed the risk of prejudice from placing officers near Stoddard and found that the risk was minimal. The trial court did not abuse its discretion.

Stoddard also urges us to find that the trial court erred in failing to conduct a hearing on the use of restraints. We reject this argument. In response to the State's pretrial brief discussing restraints, Stoddard raised no objection and raised no motion to remove restraints. The court specifically inquired about security measures at a pre-trial hearing. Stoddard made no argument against the use of restraints.[1]

While the trial court must generally hold a hearing on the use of restraints, it need not do so sua sponte where, as here, there is no dispute that the restraints are not visible to the jury and the defendant does not object. Moreover,

_____

[1] In arguing that we should review this claim raised for the first time on appeal, Stoddard asserts that his attorney was ineffective for failing to raise the issue below. The claim fails because Stoddard cannot show that his attorney's performance was deficient or that even if it was, there is a reasonable probability that but for the claimed error, the result of the trial would have been different. (See State v. Thomas, 109 Wn.2d 222, 225-56, 743 P.2d 816 (1987), applying the two prong test in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct 2052, 80 L.Ed.2d 674 (1984)).

despite Stoddard's failure to object, the trial court explained on the record the basis for its reasoning and showed that it had considered the proper factors in determining what security measures to impose. There was no error.

Finally, Stoddard argues that the trial court did not adequately consider the prejudice created by the proximity of the corrections officers and by the psychological impact of the electrical shock device. He argues that the presence of the officers near counsel table conveyed the message to the jury that Stoddard was dangerous. He also argues that fear of being shocked likely affected Stoddard's demeanor as he testified and thus harmed his credibility with the jury. We reject both arguments.

First, the trial court considered the risk of prejudice from the proximity of the officers to Stoddard. The court properly balanced its security concerns with the potential for speculation by jurors about why the officers were seated near Stoddard. There was no abuse of discretion. Second, Stoddard cites to nothing in the record supporting his claim that his demeanor during his testimony was affected by the electric shock device or that the jurors considered his testimony less credible because of the claimed effect it had on him. Relying on Riggins v. Nevada, 504 U.S. 127, 112 S.Ct 1810, 118 L.Ed.2d 479 (1992), Stoddard argues that we should simply presume prejudice, but his reliance is misplaced.

In that case, Riggins, the defendant was convicted and sentenced to death following a trial during which he was forcibly medicated with antipsychotic drugs. He appealed the trial court's refusal to allow him to attend trial in an unmedicated condition, contending that it denied him a full and fair trial. Id. at

133. In reversing Riggins' conviction, the court recognized the futility of attempting to "prove or disprove actual prejudice from the record before us" and that "the precise consequences of forcing antipsychotic medication upon Riggins cannot be shown from a trial transcript." Id. at 137. Nonetheless, Riggins was entitled to relief because his claim was supported by testimony in the record of doctors who had examined him which established "a strong possibility that [his] defense was impaired due to the administration of Mellaril." Id.

Stoddard argues that like Riggins, his claim should not be denied simply because it is difficult to discern actual prejudice from a cold record. But unlike Riggins, Stoddard cites to nothing in the record to support his claim. Instead, he asks us to speculate about the possible effect the electric shock device may have had on his testimony. Accordingly, we reject the argument.

Stoddard next argues that his conviction for assaulting Daniels rests on insufficient evidence and must be reversed. In reviewing for sufficiency of the evidence, the question is whether, "after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992) (citing State v. Green, 94 Wn.2d 216, 220-22, 616 P.2d 628 (1980)).

Stoddard argues that there was insufficient evidence for the jury to find that he intended to assault Daniels. At trial, Stoddard testified that he did not see Daniels standing outside the door, did not intend to hit Daniels with the door, and did not swing at Daniels or attempt to hit him with his fists. But the corrections officers testified that, after flying into a rage and making threats to corrections

8

officers, Stoddard ran straight to the door where Daniels was visible and charged into the door with enough force to knock Daniels down. They testified that, once outside, Stoddard continued swinging at them. Daniels testified that as he tried to restrain Stoddard, Stoddard continued trying to hit him. The jury was also shown a surveillance video that captured much of the incident.

We conclude that the evidence was sufficient for a jury to find that Stoddard intended to assault the corrections officer who stood in his way and tried to restrain him.

Affirm.

WE CONCUR:

_Spearman, J._

_Appelwick, J._

_Becker, J._