Filed
Washington State
Court of Appeals
Division Two

August 20, 2019

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  51177-1-II |
| Respondent, | |
| v. | |
| JOHN W. JACKSON, SR., | PUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — John W. Jackson, Sr. appeals his conviction and sentence for second degree assault by strangulation.  Jackson argues that the trial court violated his constitutional right to due process when it used restraints on him during pretrial hearings and jury trial without conducting an individualized inquiry into the need for the restraints.  He also argues that the trial court erred by imposing legal financial obligations (LFOs) despite his indigency.  We agree that the trial court violated his constitutional right to due process by failing to conduct an individual inquiry into the need for pretrial and trial restraints, but we hold that the errors were harmless.  Accordingly, we affirm his conviction and remand to the trial court for reconsideration of the imposition of LFOs.

## FACTS

The State charged Jackson with second degree assault for strangling his fiancée, Darci Black.

At his first pretrial appearance, Jackson appeared before the court in a belly chain and shackles.  Jackson's defense attorney objected to the restraints and moved to have them removed.

The trial court reserved ruling until it received a response and it set a hearing at a later date. The trial court set bail at $35,000 based on "the nature of the charges, the criminal history, [and] the fact that there's been at least four or five warrants over the years." Verbatim Report of Proceedings (RP) at 14.

At an arraignment hearing a few days later, the trial court declined to lower bail because the court was concerned about whether Jackson would return, about the nature of the allegations, and about community safety. The trial court again declined to reduce bail at a later status hearing.

The trial court subsequently held a hearing on Jackson's objection to restraints and motion for their removal. The hearing consolidated multiple defendants' motions regarding being shackled in their cases. The trial court said it would issue a decision that applied to the entirety of the Clallam County Superior Court.

Six weeks later, the trial court issued a memorandum opinion "address[ing] all restraint/shackling motions currently before the court and reflect[ing] the unified position of the Clallam County Superior Court on this issue." Clerk's Papers (CP) at 64. The ruling acknowledged that "less restrictive means of furthering the compelling government interest of courtroom security" existed, which would "eliminate potential problems associated with defendants being so humiliated and distracted by their restraints that it interferes with their ability to communicate with their lawyers and would address concerns associated with the routine use of restraints affronting the dignified and decorous judicial process." CP at 65-66. The trial court envisioned implementing video conferencing as a less restrictive option, but it noted that the superior court would be unable to implement a video conferencing policy for several months.

2

The trial court concluded that until the video conferencing policy could be implemented, the court would proceed under its previous ruling, which adopted the Clallam County Corrections Facility's shackling policy for all pretrial hearings. The previous policy considered general "security concerns associated with transporting varying numbers of in-custody defendants from secure facilities to less-secure courtrooms" and noted that Clallam County "is routinely limited by budget issues and staff shortages." *See* Motion to Supp. Record on Appeal at 12 (May 1, 2018). Under the policy, all criminal defendants would appear at pretrial proceedings in shackles, and the trial court would not consider motions for removal of the restraints during pretrial proceedings.

When the case proceeded to jury trial, Jackson was fitted with a leg brace, which he wore under his clothes. The brace would lock into position when he straightened his leg. Defense counsel objected to the brace, noting that the trial court had not made any rulings about the use of this restraint during trial. The trial court responded:

> At this juncture, I don't think there's anything inappropriate in having that limited security measure employed. To the extent that your client wishes to testify, we'll make sure that he gets into the witness box without the jury being present and seeing him perhaps have some difficulty walking. But, at this juncture, I think that it is appropriate to have some limited security and I think that the brace that is employed is certainly appropriate.

RP at 75.

Black testified at trial. She said that Jackson drove her to a doctor's appointment. On their way home from the appointment, Jackson drove onto an industrial road and he and Black began having sexual intercourse. Jackson became upset, accused Black of cheating on him, and ripped Black's engagement ring off of her finger. Jackson pushed Black and started to strangle her, saying, "[D]ie, why don't you F'ing die." RP at 317. Jackson let go and then strangled Black a

3

second and third time. Finally, Jackson released Black and starting crying and apologizing for almost killing her. Later that afternoon, Black told her sister that Jackson had tried to kill her and her sister called the police.

The trial court admitted a series of text messages between Black and Jackson from the day of the incident. The messages were obtained from both Black's and Jackson's phones because Black had deleted several messages.[1]

Dr. John Shima, an emergency room physician who evaluated Black the evening of the incident, also testified at trial. Dr. Shima observed that there were mild abrasions and bruises around Black's neck consistent with a strangulation event.

Jackson testified in his defense. To avoid the jury seeing Jackson struggle to walk with his leg restraint to the witness stand, the trial court instructed Jackson to enter the stand before the jury entered the courtroom. Jackson asked the trial court if he needed to stand when the jury came in. The trial court asked if it was difficult for Jackson to stand with the restraint. Jackson's defense counsel responded, "I mean, he's been doing it, but the brace will be basically on the leg next to them, when he's sitting up there, it's on his left leg." RP at 448. The court continued, "I'll give you the oath seated, so just have a seat. Actually, if you're standing when they come in, is it problematic sitting down, I mean, is it observable?" RP at 448. Jackson responded, "They can actually see it. . . . Yeah, it's gonna be noticeable for them." RP at 448. The trial court instructed him to remain seated. RP at 448.

---

[1] The messages from Jackson's phone were not obtained until the beginning of trial because the phone had remained with Jackson's brother in a different town while Jackson was incarcerated leading up to the trial. The day trial began, Jackson's uncle transported the phone to the court.

Jackson testified as follows. The day before Black's doctor's appointment, Black and Jackson had sexual intercourse in a car. After Black's doctor's appointment the next day, Jackson drove her back to her parents' house. On the way to Black's parents' house, Black became irritable, and Jackson suggested she get her medication that helps with her anger. Once at Black's parents' house, Black went inside. When Black returned to the car, she started yelling at Jackson and accused him of cheating on her. After arguing for an hour, Jackson indicated that he was going to leave, at which point Black started punching him. Jackson ultimately got out of the car and started walking away. Black chased after him, yelling at him, and demanding he tell her who he was sleeping with. Eventually Black's sister yelled at Black to "just let him go Darc, just let him go." RP at 458.

The jury found Jackson guilty of second degree assault. The trial court sentenced Jackson to 20 months confinement and imposed various LFOs.

Jackson appeals his conviction and sentence.

## ANALYSIS

### I. PRETRIAL & TRIAL RESTRAINT

Jackson argues that the trial court violated his constitutional right to due process when it adopted the jail's blanket policy of shackling criminal defendants during pretrial proceedings, and by requiring him to wear a leg restraint during the jury trial without conducting an individual inquiry into the need to restrain him. We hold that the trial court violated Jackson's constitutional right to due process by failing to perform an individualized inquiry into the need to restrain him at the pretrial proceedings and at trial, but we further hold that these errors were harmless.

A.    LEGAL PRINCIPLES

We review constitutional claims de novo.  *State v. Lundstrom*, 6 Wn. App. 2d 388, 393, 429, P.3d 1116 (2018), *review denied*, 193 Wn.2d 1007 (2019).  A criminal defendant has a right to appear before the court "with the appearance, dignity, and self-respect of a free and innocent man." *State v. Finch*, 137 Wn.2d 792, 844, 975 P.2d 967 (1999); U.S. CONST. amends. VI, XIV. The Washington Constitution provides, "In criminal prosecutions the accused shall have the right to appear and defend in person."  Wash. Const. art. I, § 22.  Washington courts have long held that the right to appear and defend in person extends to "the use of not only his mental but his physical faculties unfettered, and unless some impelling necessity demands the restraint of a prisoner, to secure the safety of others and his own custody, the binding of the prisoner in irons is a plain violation of the constitutional guaranty." *State v. Williams*, 18 Wash. 47, 51, 50 P. 580 (1897). This includes the right "to be brought into the presence of the court free from restraints." *State v. Damon*, 144 Wn.2d 686, 690, 25 P.3d 418 (2001).

"[R]egardless of the nature of the court proceeding or whether a jury is present, it is particularly within the province of the trial court to determine whether and in what manner shackles or other restraints should be used." *State v. Walker*, 185 Wn. App. 790, 797, 344 P.3d 227 (2015). Restraints are disfavored because they may interfere with important constitutional rights, "including the presumption of innocence, privilege of testifying [on] one's own behalf, and right to consult with counsel during trial." *State v. Hartzog*, 96 Wn.2d 383, 398, 635 P.2d 694 (1981).

However, a defendant's right to be in court free from restraints may yield to courtroom safety, security, and decorum. *Walker*, 185 Wn. App. at 800.  "A defendant may be restrained if necessary to prevent injury, disorderly conduct, or escape." *Lundstrom*, 6 Wn. App. 2d at 394.

The superior court has the discretion to provide for courtroom security to ensure the safety of court officers, parties, and the public. *Lundstrom*, 6 Wn. App. 2d at 394.

In order to balance the interest in courtroom security and defendants' constitutional right to due process, the superior court must determine the extent to which courtroom security measures are necessary based upon facts set forth in the record. *Lundstrom*, 6 Wn. App. 2d at 394. "The trial court should allow restraints only after conducting a hearing and entering findings on the record sufficient to justify their use on a particular defendant." *Lundstrom*, 6 Wn. App. 2d at 394. The trial court must perform an individualized inquiry into the necessity for pretrial and trial restraints. *Lundstrom*, 6 Wn. App. 2d at 395.

The Supreme Court has identified several factors that the trial court should consider when deciding whether a defendant should be restrained during trial:

> "[T]he seriousness of the present charge against the defendant; defendant's temperament and character; his age and physical attributes; his past record; past escapes or attempted escapes, and evidence of a present plan to escape; threats to harm others or cause a disturbance; self-destructive tendencies; the risk of mob violence or of attempted revenge by others; the possibility of rescue by other offenders still at large; the size and mood of the audience; the nature and physical security of the courtroom; and the adequacy and availability of alternative remedies."

*State v. Hutchinson*, 135 Wn.2d 863, 887–88, 959 P.2d 1061 (1998) (quoting *Hartzog*, 96 Wn.2d at 400).

A trial court commits constitutional error when it fails to exercise its discretion. *See State v. Clark*, 143 Wn.2d 731, 775, 24 P.3d 1006 (2001) ("[W]here no balancing or analysis as to the need to restrain [the defendant] was done, his shackling was constitutional error."). Deferring to general jail policy is an abuse of discretion and constitutional error. *Lundstrom*, 6 Wn. App. 2d at

395; *see also Hartzog*, 96 Wn.2d at 400 ("A broad general policy of imposing physical restraints upon prison inmates charged with new offenses because they may be 'potentially dangerous' is a failure to exercise discretion.") (quoting *People v. Duran*, 16 Cal. 3d 282, 293, 545 P.2d 1322, 127 Cal. Rptr. 618 (1976)); *see also State v. Jaquez*, 105 Wn. App. 699, 709, 20 P.3d 1035 (2001) ("[T]he sole reason for the trial court's allowing the use of restraints was because it was general jail policy. . . . [A] court's decision to defer to the security policy of correctional officers is unjustifiable."). "While prison officials may be well positioned to assist the trial court in deciding matters of courtroom security, they are in no position to weigh and balance the many factors the court must consider when determining whether, and in what manner, a defendant should be restrained during a court proceeding." *Walker*, 185 Wn. App. at 796-97.

Generally, an error that violates a defendant's constitutional right is presumed to be prejudicial. *Finch*, 137 Wn.2d at 859. But the State can overcome the presumption by showing that the error was harmless beyond a reasonable doubt. *Finch*, 137 Wn.2d at 859. "A claim of unconstitutional shackling is subject to harmless error analysis." *Hutchinson*, 135 Wn.2d at 888.

B.    MOOTNESS

As an initial matter, the State argues that the issue of whether the trial court violated Jackson's right to due process by failing to make an individualized determination on the necessity of restraints during pretrial hearings is moot. We disagree.

"Generally, we do not consider claims that are moot or that present only abstract questions." *Lundstrom*, 6 Wn. App. 2d at 392. An issue is moot when the "court can no longer provide effective relief." *State v. Gentry*, 125 Wn.2d 570, 616, 888 P.2d 1105 (1995).

The State contends that we cannot grant effective relief, and therefore, the issue is moot, because "the underlying criminal case has been resolved through jury trial." Br. of Resp't at 10. However, the fact that the case proceeded to trial and that Jackson was ultimately convicted, does not preclude us from granting relief. We may reverse and remand for a new trial based on pretrial errors. *See State v. Coley*, 171 Wn. App. 177, 179, 286 P.3d 712 (2012), *rev'd on other grounds¸* 180 Wn.2d 543 (2014) (reversing and remanding based on the misallocation of the burden of proof in a pretrial competency hearing).

Because a remedy remains available for the alleged pretrial errors that occurred, the issue of Jackson's pretrial restraints is not moot.

C.    CONSTITUTIONAL ERROR

Here, the trial court clearly committed constitutional error when it failed to address the necessity of shackling Jackson during pretrial hearings and of restraining Jackson with a leg brace during the jury trial.

At the pretrial stage, the trial court did not make *any* findings regarding the need to place Jackson in shackles. In fact, the trial court failed to even address whether any physical restraints were necessary. The court did not analyze any of the relevant factors and failed to recognize that under well-settled law, physical restraints should be used only in extraordinary circumstances and as a last resort.

The trial court considered the issue of shackling criminal defendants generally at a hearing involving many defendants. The trial court's decision was driven not by any identified safety risk posed by Jackson or any particular defendant, but rather by logistical concerns for the Clallam County Superior Court as a whole. Indeed, the trial court not only failed to conduct an

individualized inquiry into the need to restrain Jackson, it determined that, as a matter of superior court policy, all criminal defendants would be restrained during pretrial proceedings without any consideration of motions for removal of restraints.

Similarly, the trial court failed to conduct any analysis as to the need to restrain Jackson with a leg brace during trial. The trial court did not apply any of the *Hartzog* factors. Rather, the court simply stated that it did not see "anything inappropriate" about the leg brace. RP at 75.

The failure to conduct any inquiry into the need to restrain Jackson, and the broad adoption of jail policy for all criminal defendants in pretrial proceedings, was clearly in violation of well-established constitutional law.

D.   HARMLESS ERROR

Having established that the superior court violated Jackson's constitutional right to due process, we next determine whether the decision to restrain Jackson was harmless beyond a reasonable doubt.[2] *See Finch*, 137 Wn.2d at 859. For erroneous restraints to be reversible rather than harmless error, the record must show that the restraints "had a substantial or injurious effect or influence on the jury's verdict." *Hutchinson*, 135 Wn.2d at 888.

---

[2] Jackson argues that the superior court's systemic refusal to conduct the requisite individual inquiry before shackling Jackson, and other criminal defendants appearing in Clallam County Superior Court, constitutes structural error and is not subject to a harmless error analysis. "A structural error resists harmless error review completely because it taints the entire proceeding." *State v. Levy*, 156 Wn.2d 709, 725, 132 P.3d 1076 (2006). Such structural errors include total denial of counsel, a biased trial judge, racial discrimination in jury selection, denial of self-representation at trial, and denial of a public trial. *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991). "Each of these constitutional deprivations is a similar structural defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Fulminante*, 499 U.S. at 310. Jackson provides no authority to support the extension of the structural error doctrine to shackling, and we decline to do so for the first time here.

Because the purposes of the pretrial phase and guilt phase of criminal proceedings are different, we assess the harmlessness of Jackson's restraints during pretrial hearings and during jury trial separately. *See Finch*, 137 Wn.2d at 862. During the pretrial proceedings, one of the trial court's duties was to set bail. During jury trial, the inquiry was whether evidence established Jackson's guilt of the charged crime.

Jackson argues that his shackling during pretrial proceedings was not harmless error because "[s]hackles make a person appear dangerous and unmanageable, which prejudices the court's assessment of whether to release Mr. Jackson and what bail amount he must post." Br. of Appellant at 26. He further argues that his shackling was harmful error because it resulted in a high bail that he could not afford to pay, which prevented him from assisting in his defense by timely providing the text messages from his phone.

Jackson appeared in a belly chain and shackles for his pretrial hearings. The trial court set bail at $35,000 based on "the nature of the charges, the criminal history, [and] the fact that there's been at least four or five warrants over the years." RP at 14. At an arraignment hearing a few days later, the trial court declined to lower bail, in part, due to the nature of the charges and concerns for the community's safety, and due to concerns that Jackson may not appear at future proceedings.

The likelihood of prejudice is significantly reduced in a proceeding without a jury. *State v. E.J.Y.*, 113 Wn. App. 940, 952, 55 P.3d 673 (2002). There is a presumption that the trial court properly discharged its official duties without bias or prejudice. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 692, 101 P.3d 1 (2004). Additionally here, the trial court pointed to significant concerns that Jackson posed a flight risk if he was released based on his history of outstanding

11

warrants. Because the record suggests that the trial court's bail determination was not driven by the sentiment that Jackson was dangerous, which Jackson's shackles could have contributed to, we hold that the trial court's error in restraining Jackson during pretrial proceedings was harmless beyond a reasonable doubt.

We also hold that the trial court's error in restraining Jackson during trial was harmless beyond a reasonable doubt. Improperly restraining a defendant is harmless error if the jury does not see the defendant in restraints. *Clark*, 143 Wn.2d at 777. Although Jackson told the court that, from the witness stand, the jury could see his leg brace restraint if he was standing, nothing in the record suggests that the jury actually saw or was aware of the leg restraint, in part because Jackson remained seated in the jury's presence. Jackson's defense counsel acknowledged that the brace was "not visible from outside his clothes." RP at 75. Furthermore, Jackson moved around the courtroom only while the jury was not present so the jury would not see Jackson struggle to walk with the brace. Because there is no evidence that the unseen restraint had a substantial or injurious effect on the jury's verdict, we hold that the erroneous imposition of the leg brace restraint was harmless beyond a reasonable doubt.

No. 51177-1-II

## II. Legal Financial Obligations

Jackson also argues that the trial court erred by imposing LFOs despite his indigence.

In 2018, the legislature amended the statutes pertaining to LFOs. Laws of 2018, ch. 269. The amendments apply to this case because it was not final on June 7, 2018, when the amendments took effect. *State v. Ramirez*, 191 Wn.2d 732, 747-49, 426 P.3d 714 (2018).

Accordingly, we affirm Jackson's convictions and remand to the trial court to reconsider imposition of LFOs in accordance with *Ramirez* and the relevant statutory amendments.

SUTTON, J.

I concur:

GLASGOW, J.

13

MELNICK, J. (concurrence) — Although I concur in the majority's analysis and resolution of the shackling issue, I write separately to express my concerns regarding what the appropriate remedy should be when a court improperly shackles a person who appears before it.[3] John W. Jackson, Sr. urges us to dispense with the harmless error test that we currently utilize and instead adopt a structural error analysis. Because the Court of Appeals is bound to follow Supreme Court precedent, I concur with the majority's decision to not accept Jackson's invitation. However, I believe a new look at the appropriate remedy for what appears to be a statewide, systemic violation is warranted.

The law is clear, well-settled, and not in dispute. A person has a right to appear "before the court with the appearance, dignity, and self-respect of a free and innocent man." *State v. Finch*, 137 Wn.2d 792, 844, 975 P.2d 967 (1999). Thus, a defendant "is entitled to appear at trial free from all bonds or shackles except in extraordinary circumstances." *Finch*, 137 Wn.2d at 842. Restraints should only be used when necessary to prevent courtroom injuries, disorderly conduct, or escapes. *Finch*, 137 Wn.2d at 846.

The rule on shackling is not confined to trials. *State v. Lundstrom*, 6 Wn. App. 2d 388, 392, 429 P.3d 1116 (2018). "[R]egardless of the nature of the court proceeding or whether a jury is present," the court shall decide when and how shackles or restraints should be utilized. *State v. Walker*, 185 Wn. App. 790, 797, 344 P.3d 227 (2015).[4]

---

[3] Nothing in this opinion should be construed to address the separate issues involving the use of shackles when transporting or detaining prisoners.

[4] Although not applicable to this case, I also note that "[j]uveniles shall not be brought before the court wearing any physical restraint devices except when ordered by the court during or prior to the hearing." JuCR 1.6(a).

The courts are to ensure the safety of court officers, the public, and the parties. *Lundstrom*, 6 Wn. App. 2d at 394. Courts must balance, among other factors, the need for a secure courtroom with the constitutional presumption of innocence, the rights of the defendant, and the dignity of the judicial process. *Finch*, 137 Wn.2d at 844-46. Because the interests of jail administrators are different from the interests of the court, courts cannot defer to jail policy. *Walker*, 185 Wn. App at 796. They must exercise their own discretion. *Lundstrom*, 6 Wn. App. 2d at 395.

> While prison officials may be well positioned to assist the trial court in deciding matters of courtroom security, they are in no position to weigh and balance the many factors the courts must consider when determining whether, and in what manner, a defendant should be restrained during a court proceeding.

*Walker*, 185 Wn. App. at 796-97.

Relying on *State v. Hartzog*, 96 Wn.2d 383, 635 P.2d 694 (1981), the appellate courts have concluded that trial courts may not adopt general policies regarding the imposition of restraints but must exercise their discretion based on facts developed in and set forth in the record. *E.g.*, *Lundstrom*, 6 Wn. App. 2d at 394-95. The use of physical restraints should be authorized only as a last resort. *Finch*, 137 Wn.2d at 850.

The Washington Supreme Court has decided that a harmless error test applies when a court violates the above-stated rules. *State v. Hutchinson*, 135 Wn.2d 863, 888, 959 P.2d 1061 (1998). We are obligated to follow and are bound by the Supreme Court's decisions. *State v. Hairston*, 133 Wn.2d 534, 539, 946 P.2d 397 (1997).

It appears to me that the application of the harmless error test in the area of shackling defendants who appear before the court, especially when the court has not made any individual inquiry, has resulted in a constitutional violation without a remedy. Regardless of the well-settled

and clearly articulated principles of law in this area, it appears trial courts have difficulty adhering to them.

My survey of cases shows that there are no fewer than 14 cases since February 2015 where our appellate courts have found a violation of a defendant's right to be free from shackles, yet every case has resulted in harmless error.[5] In *Lundstrom*, the trial court did not exercise its discretion, effectively deferring to the jail's policy. 6 Wn. App. 2d at 395. Similar situations existed in *State v. Zain*, *State v. Smith*, and *State v. Montenguise*.[6] In *State v. Calhoon*, *State v. Boatright*, and *State v. Bruce*, the court held a hearing, but the evidence did not support the court's decision to physically restrain the defendant.[7] In *State v. Huynh*, *State v. Flores*, and *In re Welfare of A.N.B.*, the court held a hearing, and we either assumed without deciding that the court abused its discretion or did not decide the issue because we determined that any error would have been harmless.[8] In *State v. Lomax* and *State v. Bakke*, the court abused its discretion by either not

---

[5] I rely on unpublished cases not as persuasive authority, but as part of the data-gathering process.

[6] *State v. Zain*, No. 47368-2-II (Wash. Ct. App. Dec. 1, 2015) (unpublished), http://www.courts.wa.gov/opinions/; *State v. Smith*, No. 45777-6-II (Wash. Ct. App. Aug. 11, 2015) (unpublished), http://www.courts.wa.gov/opinions/; *State v. Montenguise*, No. 33007-9-III (Wash. Ct. App. July 7, 2015) (unpublished), http://www.courts.wa.gov/opinions/.

[7] *State v. Calhoon*, No. 49346-2-II (Wash. Ct. App. Apr. 10, 2018) (unpublished), http://www.courts.wa.gov/opinions/; *State v. Boatright*, No. 49218-1-II (Wash. Ct. App. Nov. 21, 2017) (unpublished), http://www.courts.wa.gov/opinions/; *State v. Bruce*, No. 49058-7-II (Wash. Ct. App. Nov. 14, 2017) (unpublished), http://www.courts.wa.gov/opinions/.

[8] *State v. Huynh*, No. 50218-6-II (Wash. Ct. App. Mar. 20, 2018) (unpublished), http://www.courts.wa.gov/opinions/; *State v. Flores*, No. 49777-8-II (Wash. Ct. App. Nov. 7, 2017) (unpublished), http://www.courts.wa.gov/opinions/; *In re Welfare of A.N.B.*, Nos. 71230-6-I, 71231-4-I, 71232-2-I, 71233-1-I, 71234-9-I, 71236-5-I, 71237-3-I (Wash. Ct. App. Feb. 23, 2015) (unpublished), http://www.courts.wa.gov/opinions/.

conducting a hearing or conducting an inadequate hearing.[9] In *State v. Mendez*, the State conceded that the trial court did not make an adequate record to support the use of restraints.[10] In *In re Personal Restraint of Pender*, we concluded harmless error existed after the sheriffs' office decided the defendant had to wear a stun belt at trial but never informed the court.[11]

In the present case, the State conceded in oral argument that it has been confronting the issue of shackling defendants for the last one to two years. Wash. Court of Appeals oral argument, *State v. Jackson*, No. 51177-1-II (Apr. 8, 2019), at 7 min., 39 sec. through 7 min., 44 sec. (on file with court). The State also admitted that judges are not making individualized determinations regarding shackling and restraints, but are instead leaving it to the jail staff. Wash. Court of Appeals oral argument, *State v. Jackson*, No. 51177-1-II (Apr. 8, 2019), at 10 min., 54 sec. through 11 min., 4 sec. (on file with court). Finally, the State conceded that, based on its blanket policy, it presumes defendants appearing in court are dangerous. Wash. Court of Appeals oral argument, *State v. Jackson*, No. 51177-1-II (Apr. 8, 2019), at 20 min., 15 sec. through 20 min., 30 sec. (on file with court).

As pointed out by the majority, the trial court considered the shackling issue at a hearing involving multiple defendants. The court did not make or consider individualized determinations.

---

[9] *State v. Lomax*, No. 48072-7-II (Wash. Ct. App. June 13, 2017) (unpublished), http://www.courts.wa.gov/opinions/; *State v. Bakke*, No. 46696-1-II (Wash. Ct. App. Feb. 9, 2016) (unpublished), http://www.courts.wa.gov/opinions/.

[10] *State v. Mendez*, No. 49847-2-II (Wash. Ct. App. May 22, 2018) (unpublished), http://www.courts.wa.gov/opinions/.

[11] *In re Pers. Restraint of Pender*, No. 42430-4-II (Wash. Ct. App. Feb. 10, 2015) (unpublished), http://www.courts.wa.gov/opinions/.

By adopting the jail's policy, the court determined that all defendants would be restrained during pretrial proceedings. Motion to Supp. Record on Appeal, *State v. Jackson*, No. 51177-1-II (May 1, 2018), at 12. In addition, the court did not see "anything inappropriate" about having Jackson in a leg brace for trial, notwithstanding its failure to conduct a hearing and consider the mandatory factors. Report of Proceedings (Aug. 21, 2017) at 75.

"[J]udges are human, and the sight of a defendant in restraints may unconsciously influence even a judicial factfinder." *People v. Best*, 19 N.Y. 3d 739, 744, 979 N.E. 2d 1187 (2012).[12] Studies support the proposition that judges, like laypersons, are similarly prone to implicit associations and implicit biases. *See, e.g.*, JUDGE ANDREW J. WISTRICH & JEFFREY J. RACHLINSKI, IMPLICIT BIAS IN JUDICIAL DECISION MAKING: HOW IT AFFECTS JUDGMENTS AND WHAT JUDGES CAN DO ABOUT IT, *in* ENHANCING JUSTICE: REDUCING BIAS 87 (Sarah E. Redfield ed., 2017).

It is clear that in the present case the trial court failed to follow well-established and clearly stated legal principles. As a result, we are bound to conclude error occurred, but we must also determine that the error was harmless. I think the application of this remedy should be revisited, especially where, as here, the court failed to conduct an individualized hearing on the use of pretrial and trial restraints.



MELNICK, J.

---

[12] I note that in considering the release of a defendant, CrR 3.2 requires a court to determine, among other factors, whether a defendant is dangerous and a flight risk.