# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73761-9-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| TERRY JOEL CAVER, | ) | |
| | ) | |
| Appellant. | ) | FILED: September 6, 2016 |
| | ) | |

LEACH, J. — Terry Caver appeals his conviction for possession of methamphetamine. He contends that the trial court violated his constitutional right to a fair trial when it denied his request to wear jail clothes at trial. Also, he challenges the trial court's exclusion of detailed testimony about his attempts to obtain drug treatment in jail after his arrest. Finally, he requests that if the State prevails in this appeal, this court decline to award it costs. Because wearing civilian clothes at trial does not inherently prejudice a defendant, ordering Caver to wear them does not implicate his constitutional rights. And because the trial court had reasonable grounds to deny Caver's request to wear jail clothes, the trial court did not abuse its discretion in doing so. Caver's attempts to get treatment in jail are not relevant to any issue at trial. The trial court did not abuse its discretion by excluding testimony about those attempts. And because Caver

is only 53 years old, was sentenced to only 90 days in jail, and can petition the trial court for relief if he continues to be unable to pay the costs, we decline Caver's request that we deny appellate costs to the State. We affirm.

## FACTS

On May 13, 2015, Terry Caver called 911 and asked to be taken for treatment because he "was having a mental breakdown." He was high on methamphetamine (meth).

Two police officers responded. They found Caver as he left the Everett Foot Clinic, where he had gone for help. Caver had his hands in his jacket pockets. He appeared afraid and paranoid. One of the officers ordered Caver to remove his hands from his pockets. When he did so, he held an open pocket knife. He dropped the knife when the police asked him to. The officers then detained Caver and frisked him for weapons. During the frisk, Officer Timothy O'Hara felt what he recognized to be a meth pipe. The officers arrested Caver. In a search incident to this arrest, they found a "baggie" containing a small amount of meth.

Caver asked the officers to take him to triage for mental health and drug abuse treatment instead of jail. The officers booked him into Snohomish County Jail. Officer O'Hara explained at trial that they did so because the jail has

available mental health professionals and separate housing for inmates with mental health issues.

Caver remained in custody when his trial began two months later. At the start of trial, he asked the trial court for permission to wear his jail clothes in front of the jury. He explained that the clothes "represent that I'm in here, that I'm not on the street. It represent[s] what's really going on in my life. I don't want these people thinking that I'm on the streets when I'm not on the streets."[1] The trial court denied Caver's request, stating that "it causes much mischief if the defendant is clothed in regular jail garb." The court explained to Caver that wearing jail clothes would cause the jury to speculate about why he was in jail and whether he posed a danger to them.

Before trial, the State asked the court to exclude evidence that Caver requested treatment rather than incarceration. It argued this evidence was not relevant to whether Caver knowingly possessed drugs and would merely create sympathy for Caver. Caver responded that the statements were relevant for his unwitting possession defense, which posited that he would not have called 911 if he knew he had meth in his pocket. The trial court initially indicated it would exclude evidence about Caver's requests and about the available drug and mental health treatment in jail, seeing both topics as irrelevant. After further

---

[1] Caver's trial counsel told the court that she had instructed Caver to dress in civilian clothes.

argument, though, the trial court reversed itself and allowed both types of evidence.

The trial court did not exclude either category of evidence during Officer O'Hara's testimony. O'Hara described a "triage" facility, which treats people who have mental health issues or are under the influence of drugs. He acknowledged that Caver requested several times to go to a triage facility. Then he described Snohomish County Jail's mental health and treatment facilities and services.

Caver testified that he had tried unsuccessfully to get treatment in jail. He said that he had given up because the line was long and he was also waiting for a bed. The trial court sustained an objection to Caver's further testimony about his attempts to get treatment, ruling that testimony irrelevant.

The jury found Caver guilty of one count of methamphetamine possession. Caver appeals.

ANALYSIS

<u>Request To Wear Jail Clothes</u>

First, Caver contends that the trial court violated his due process rights by not allowing him to wear jail clothes at trial.

The right to a fair trial entitles a defendant to appear "free from all bonds or shackles except in extraordinary circumstances."[2] A defendant has the right

---

[2] <u>State v. Finch</u>, 137 Wn.2d 792, 842-43, 975 P.2d 967 (1999).

not to appear in jail or prison clothing.[3] These rights stem from the defendant's presumption of innocence and a right to be free from measures that unfairly prejudice the jury.[4] Contrary to Caver's apparent argument, they do not include a broad freedom for the defendant to express himself through his dress.

When a defendant challenges a trial management decision, we normally review the decision for abuse of discretion.[5] When the decision is "inherently prejudicial," we scrutinize it closely, asking if it was "necessary to further an essential state interest."[6] To determine if a courtroom arrangement is "'inherently prejudicial,'" we ask if it presents "'an unacceptable risk'" of bringing "'impermissible factors'" into play.[7] This risk comes from "'the wider range of inferences that a juror might reasonably draw'" from the arrangement.[8] We use "reason, principle, and common human experience" to evaluate the likely effects of a measure on a juror's judgment.[9]

---

[3] Estelle v. Williams, 425 U.S. 501, 504-05, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976).

[4] Finch, 137 Wn.2d at 844-45.

[5] State v. Jaime, 168 Wn.2d 857, 865, 233 P.3d 554 (2010).

[6] Finch, 137 Wn.2d at 846 (quoting Estelle, 425 U.S. at 504).

[7] Jaime, 168 Wn.2d at 862 (quoting In re Pers. Restraint of Woods, 154 Wn.2d 400, 417, 114 P.3d 607 (2005)).

[8] Jaime, 168 Wn.2d at 862 (quoting Holbrook v. Flynn, 475 U.S. 560, 569, 106 S. Ct. 1340, 89 L. Ed. 2d 525 (1986)).

[9] Estelle, 425 U.S. at 504.

Compelling a defendant to stand trial before a jury in identifiable prison clothes[10] or in bonds or shackles[11] is inherently prejudicial for four reasons. These measures erode the presumption of innocence, which entitles the defendant to be "brought before the court with the appearance, dignity, and self-respect of a free and innocent man."[12] They single out the defendant "as a particularly dangerous or guilty person" and show "the need to separate [the] defendant from the community at large."[13] They offend the dignity of the judicial process.[14] And shackles restrict a defendant's ability to assist counsel and testify on the defendant's own behalf.[15]

A trial court raises none of these concerns when it directs a defendant <u>not</u> to dress in jail clothing. In <u>State v. Gilcrist</u>,[16] the Supreme Court rejected the argument that the trial court violated the defendants' rights by requiring them to wear state-provided civilian clothes. It distinguished <u>Estelle v. Williams</u>,[17] where the defendant "'appeared at trial in clothes that were distinctly marked as prison

---

[10] <u>Estelle</u>, 425 U.S. at 504-05.

[11] <u>Finch</u>, 137 Wn.2d at 842.

[12] <u>Finch</u>, 137 Wn.2d at 844.

[13] <u>Finch</u>, 137 Wn.2d at 845 (quoting <u>Holbrook</u>, 475 U.S. at 568-69).

[14] <u>Finch</u>, 137 Wn.2d at 845 (holding trial court abused its discretion in allowing defendant to be shackled during trial and sentencing).

[15] <u>Finch</u>, 137 Wn.2d at 845.

[16] 91 Wn.2d 603, 610, 590 P.2d 809 (1979); <u>see also State v. Stevens</u>, 35 Wn. App. 68, 71-72, 665 P.2d 426 (1983).

[17] 425 U.S. 501, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976).

issue.'"[18] In Gilcrist, the trial court compelled the defendants to appear "in sports coats, slacks, ties and shirts."[19] The Supreme Court held the defendants did not have a constitutional right to select their own clothing for trial and, noting the trial court's reasonable explanation, affirmed its judgment.[20]

Here, as in Gilcrist, the trial court's decision did not create an unacceptable risk of prejudice.[21] Compelling Caver to wear civilian clothes did not erode the "physical indicia of [his] innocence," as requiring him to wear jail clothes or shackles would.[22] It did the opposite by making him appear as any member of the public.[23] Similarly, civilian clothes did not single Caver out "as a particularly dangerous or guilty person."[24] And civilian clothes did not offend the dignity of the judicial process or restrict Caver's ability to assist counsel and testify.[25] Because the trial court's decision created no risk of bringing "impermissible factors" into play for the jury, that decision was not inherently prejudicial. Thus, we decline to apply the close scrutiny Caver argues for.

We instead conclude that the trial court did not abuse its discretion. It reasonably determined that allowing Caver to wear jail clothes would cause

---

[18] Gilcrist, 91 Wn.2d at 610 (quoting Estelle, 425 U.S. at 502).
[19] Gilcrist, 91 Wn.2d at 610.
[20] Gilcrist, 91 Wn.2d at 610.
[21] See Estelle, 425 U.S. at 504-05.
[22] See Finch, 137 Wn.2d at 844.
[23] See Gilcrist, 91 Wn.2d at 610.
[24] See Finch, 137 Wn.2d at 845.
[25] See Finch, 137 Wn.2d at 845.

"much mischief." As the trial court explained, this attire could cause the jury to speculate about why Caver was in jail and whether he was dangerous.

The trial court did not need to engage Caver in a colloquy or make findings on the record before requiring him to appear in civilian clothes. These procedural safeguards are necessary to protect constitutional rights, including a defendant's right to counsel and a prisoner's "liberty interest in avoiding the unwanted administration of antipsychotic drugs."[26] Caver can show no such right to appear in jail clothes. He contends that the trial court's decision violated his right to present a complete defense by undermining his credibility and not allowing him "to be as honest as possible with the jury about his circumstances"—but that right does not include a right to appear in jail clothes. The link between Caver's jail attire and his truthfulness, which he contends the jury would make, defies "reason, principle, and common human experience."[27] And Caver fulfilled his stated objective in wearing jail clothes—letting the jury know "what's really going on in [his] life"—by telling them about his experiences. His opportunity to testify satisfied any interest he had in appearing candid with the jury.

---

[26] Washington v. Harper, 494 U.S. 210, 221-22, 110 S. Ct. 1028, 108 L. Ed. 2d 178 (1990).

[27] Estelle, 425 U.S. at 504.

Finally, courts' observations that defendants sometimes choose to wear jail clothes as a trial tactic do not imply that defendants have a right to do so.[28] As discussed above, no such right exists, and a trial court can restrict that choice so long as it does not abuse its discretion. Accordingly, we hold that the trial court did not err in requiring Caver to wear civilian clothes at trial.

<u>Evidentiary Rulings</u>

Caver also contends that the trial court erred in excluding testimony about his attempts to get treatment in jail.

We review a trial court's decision to exclude evidence for abuse of discretion.[29] A criminal defendant's right to present a defense extends to "'relevant evidence that is not otherwise inadmissible.'"[30] But "a criminal defendant has no constitutional right to have irrelevant evidence admitted in his or her defense."[31] Evidence is relevant where it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[32]

---

[28] <u>See</u> <u>Estelle</u>, 425 U.S. at 507-08; <u>Felts v. Estelle</u>, 875 F.2d 785, 786 (9th Cir. 1989).

[29] <u>State v. Atsbeha</u>, 142 Wn.2d 904, 913-14, 16 P.3d 626 (2001).

[30] <u>State v. Mee Hui Kim</u>, 134 Wn. App. 27, 41, 139 P.3d 354 (2006) (quoting <u>State v. Rehak</u>, 67 Wn. App. 157, 162, 834 P.2d 651 (1992)).

[31] <u>State v. Hudlow</u>, 99 Wn.2d 1, 15, 659 P.2d 514 (1983).

[32] ER 401.

Here, the trial court allowed Caver to testify that he called 911 multiple times seeking treatment and about his unsuccessful attempts to get treatment when he was in jail after his arrest. The trial court sustained the State's objection only when his counsel continued down that path, asking about a specific person Caver talked to in his effort to obtain in-jail treatment.

The trial court did not exclude any relevant evidence. The State charged Caver with possession of methamphetamine, a crime with two elements: possession of methamphetamine occurring in Washington. Caver's defense at trial was unwitting possession: in short, that he would not have called 911 if he had known he still had meth in his pocket.[33] Caver's proposed testimony about his specific attempts to obtain treatment after his arrest could not have "any tendency" to make any fact of consequence to the drug possession charge or unwitting possession defense "more or less probable," as Caver made those attempts after the crime and arrest occurred.[34]

Appellate Costs

Finally, Caver contends that this court should not impose on him the costs of his appeal. The trial court found Caver indigent and waived all discretionary

---

[33] As the trial court noted, Caver's was a dubious case for unwitting possession, since he admitted the meth was his but simply thought he did not have any left when he called 911. Nonetheless, the trial court allowed the defense instruction.

[34] ER 401.

-10-

legal financial obligations. Caver asserts that imposing costs on an indigent appellant is contrary to law. He asserts, alternatively, that this court should exercise its discretion not to impose appellate costs against him.

"The commissioner or clerk 'will' award costs to the State if the State is the substantially prevailing party on review, *'unless the appellate court directs otherwise in its decision terminating review.*'"[35] When a party raises the issue in its brief, we will exercise our discretion to decide if costs are appropriate.[36] We base our decision on factors the parties set forth in their briefs rather than remanding to the trial court.[37]

An indigent defendant "'does not have . . . a right to an appeal at public expense, if he [or she] can afford to pay for that appeal'" by the time the State enforces collection or sanctions the defendant for nonpayment.[38] This court has thus declined, as a matter of course, to waive appellate costs for indigent

---

[35] State v. Sinclair, 192 Wn. App. 380, 385-86, 367 P.3d 612 (quoting RAP 14.2), review denied 185 Wn.2d 1034 (2016).

[36] Sinclair, 192 Wn. App. at 388-90.

[37] Sinclair, 192 Wn. App. at 389-90. As with requests for attorney fees on appeal, "a short paragraph or even a sentence" would be sufficient. Sinclair, 192 Wn. App. at 390. The parties provide such arguments here.

[38] State v. Nolan, 98 Wn. App. 75, 80, 988 P.2d 473 (1999) (second alteration in original) (internal quotation marks omitted) (quoting State v. Blank, 131 Wn.2d 230, 250, 930 P.2d 1213 (1997)). "'[RCW 10.73.160] simply provides a mechanism for recouping the funds advanced to ensure [the defendant's] right of appeal.'" Nolan, 98 Wn. App. at 80 (internal quotation marks omitted) (quoting Blank, 131 Wn.2d at 250).

defendants.[39] We instead conduct an "individualized inquiry" into the defendant's present and likely future ability to pay.[40] Unless a trial court finds that an indigent defendant's financial condition has improved, we presume the defendant continues to be indigent.[41] This present ability to pay is one factor in this court's decision whether to impose costs, but it is not the only factor, "nor is it necessarily an indispensable factor."[42]

In State v. Sinclair,[43] this court denied appellate costs to the State. The trial court had ruled the defendant indigent. The trial court did not find, and the State presented no evidence on appeal, that the defendant's financial condition was likely to improve. This court therefore presumed that the defendant remained indigent. This court further saw "no realistic possibility," given that the defendant was 66 years old and received a 280-month prison sentence, that he would be able to pay appellate costs.[44]

---

[39] Sinclair, 192 Wn. App. at 391; Nolan, 98 Wn. App. at 80; see also Blank, 131 Wn.2d at 252-53. "To decide that appellate costs should never be imposed as a matter of policy no more comports with a responsible exercise of discretion than to decide that they should always be imposed as a matter of policy." Sinclair, 192 Wn. App. at 391.

[40] Sinclair, 192 Wn. App. at 391.

[41] RAP 15.2(f).

[42] Sinclair, 192 Wn. App. at 389.

[43] 192 Wn. App. 380, 393, 367 P.3d 612, review denied, 185 Wn.2d 1034 (2016).

[44] Sinclair, 192 Wn. App. at 393.

In contrast, the Supreme Court determined in State v. Blank[45] that denying the State's appellate cost request would be premature. There, as in Sinclair, the defendant was indigent and incarcerated. But unlike Sinclair, the record in Blank did not support the defendant's speculation that he would be unable to pay in the future. The court reasoned that "[i]f in the future repayment will impose a manifest hardship on defendant, or if he is unable, through no fault of his own, to repay, [RCW 10.73.160(4)] allows for remission of the costs award."[46]

Here, the trial court found Caver indigent for purposes of appeal and authorized payment of his costs and fees by the State. Because, as in Sinclair, the State has presented no trial court order finding that Caver's financial condition has improved or is likely to improve, we presume that Caver remains indigent. But, as in Blank, the record contains no information about Caver's likely future ability to pay, notwithstanding his present indigency.[47] He is only 53 years old and was in jail for only 90 days. Unlike Sinclair, there is a "realistic possibility" on the slim record now before the court that Caver will be able to pay costs in the future.[48] Accordingly, we decline to deny the State costs as the prevailing party on appeal.[49]

---

[45] 131 Wn.2d 230, 252-53, 930 P.2d 1213 (1997).
[46] Blank, 131 Wn.2d at 253.
[47] See Blank, 131 Wn.2d at 253.
[48] See Sinclair, 192 Wn. App. at 393.
[49] RAP 14.2.

This does not leave Caver without relief if he cannot pay.[50] Former RCW 10.73.160(4) (1995) allows the sentencing court to remit costs to the defendant if payment would "impose manifest hardship on the defendant [or] the defendant's immediate family."[51]

## CONCLUSION

Because compelling Caver to wear civilian clothes was not inherently prejudicial and the trial court based its decision on tenable grounds, the trial court did not abuse its discretion in denying Caver's request to wear jail clothes. Because evidence about Caver's efforts to obtain drug treatment in jail were not relevant, the trial court properly excluded that evidence. And because there is a realistic possibility that Caver will be able to pay appellate costs and Caver can challenge those costs if he cannot afford to pay if and when the State attempts to collect them, we decline Caver's request that we deny the State costs. We affirm.

_Leach, J._

WE CONCUR:

_Trickey, A.C.J._          _Cox, J._

---

[50] See Blank, 131 Wn.2d at 242.
[51] Nolan, 98 Wn. App. at 79.

-14-