
FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2017 AUG -7 AM 9: 27

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 74673-1-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| MICHAEL RICHARD BRUCE, | ) | |
| Appellant. | ) | FILED: August 7, 2017 |
| | ) | |

APPELWICK, J. — Bruce was convicted of residential burglary. He contends that the evidence was insufficient to support his conviction, that the trial court abused its discretion in not severing his trial from his codefendants, and that the jury instructions amounted to a judicial comment on the evidence. We affirm.

## FACTS

At about 5:30 a.m. on September 27, 2012, Bill Campbell saw four men carrying boxes and large bags out of a neighbor's carport and called 911. Snohomish County Sheriff's Deputy John Sadro was one of the first officers to arrive at the scene. Deputy Sadro observed a damaged lock to a gate that had "tool marks," and a door into the house appeared to have been pried open.

Lynnwood Police Department Sergeant Coleman Langdon also responded. He observed two males, later identified as Denis Gorbunov and Svein Vik, walking along Serene Way towards a white minivan, and spoke with them. Sergeant Langdon patted down Gorbunov. He discovered a flat prying tool. The police

found stolen property from the residence inside the white van. Sergeant Langdon and his K9 swept the house, but they found no other individuals in the house.

Snohomish County Sheriff's Deputy Troy Koster also responded to the scene. He approached a Jeep parked on the side of the road. The hood was warm, as if it had recently been running. He saw someone lying down in the back seat, later identified as Michael Bruce. He also saw bolt cutters and a backpack "full of something."

Deputy Koster spoke with Bruce. Bruce stated that he had attended a barbecue in the area the night before and was on his way home when the vehicle broke down, so he decided to sleep in it.

Police also located a man named Edward Blunt at the scene. Blunt claimed that, unrelated to Bruce, he had fallen asleep drunk in the residence's backyard. But, his driver's license was found inside the Jeep that Bruce claimed to be sleeping in.

Police ultimately found items belonging to the residence owner, Sandra Davis, inside the Jeep. Bruce was charged with one count of residential burglary. Bruce, Vik, and Blunt were tried in a single trial. The jury found Bruce guilty. Bruce appeals. .

## DISCUSSION

Bruce makes three arguments. First, he argues that the evidence was insufficient to support his conviction. Second, he argues that the trial court abused its discretion in denying his motions to sever trial from his codefendants. Third, he argues that the jury instructions amounted to a judicial comment on the evidence.

2

I. Sufficiency of Evidence

Bruce argues that the evidence was insufficient to support his conviction for residential burglary. The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). When the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant. Id. A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom. Id.

Under RCW 9A.52.025, "[a] person is guilty of residential burglary if, with intent to commit a crime against a person or property therein, the person enters or remains unlawfully in a dwelling other than a vehicle." The State's theory of the case included the possibility that Bruce was an accomplice to the crime. A person is an accomplice of another person in the commission of a crime if:

> (a) With knowledge that it will promote or facilitate the commission of the crime, he or she:
>
> (i) Solicits, commands, encourages, or requests such other person to commit it; or
>
> (ii) Aids or agrees to aid such other person in planning or committing it.

RCW 9A.08.020(3).

While no evidence directly put Bruce inside of the residence, extensive evidence supported an inference that he had in fact been a participant in the

residential burglary. Neighbor William Campbell saw a man walk away from the house and place a package in the back of the Jeep. Bruce was found inside of the Jeep that was parked near the residence. Bruce told police that he had been sleeping there that night, but the hood of the Jeep was warm to the touch, suggesting that it had recently been running. Inside the Jeep, police found medications prescribed to the residence owner, Sandra Davis, mail addressed to Davis, checkbooks in Davis's name, a credit card belonging to Davis's father, Ansel Davis, and receipts with Sandra Davis's name on them. The Jeep also contained bolt cutters, a pair of pliers, and a screwdriver. The lock of the gate to the residence was broken and the door to the house appeared to have been pried open. Police found a glove in the Jeep's glove compartment that matched a single glove that police found inside of the residence. And, police found numerous items from Davis's residence at Vik's residence.[1] Bruce's driver's license showed Vik's residence as Bruce's address, and Bruce received mail at that address.

Bruce notes that mere physical presence at a scene is not sufficient to show that an individual was an accomplice to a crime. State v. Roberts, 80 Wn. App. 342, 355, 908 P.2d 892 (1996). But, the evidence at trial established far more than mere physical presence. The evidence was sufficient to support the jury's verdict finding Bruce guilty of residential burglary.

---

[1] Similarly, police found additional stolen goods, including Davis's credit cards and receipts, in Vik's white van.

II. Severance

Bruce moved to sever trial from his codefendants multiple times. He argues that the trial court abused its discretion in denying his motions to sever under CrR 4.4(c)(2). That rule states that a trial court should grant a severance

> (i) if before trial, it is deemed necessary to protect a defendant's rights to a speedy trial, or it is deemed appropriate to promote a fair determination of the guilt or innocence of a defendant; or

> (ii) if during trial upon consent of the severed defendant, it is deemed necessary to achieve a fair determination of the guilt or innocence of a defendant.

Id.

A trial court's denial of a motion for severance will not be reversed absent a manifest abuse of discretion. State v. Dent, 123 Wn.2d 467, 484, 869 P.2d 392 (1994). "Separate trials are not favored in this state." Id. On appeal from denial of a motion for severance, the defendant has the burden of demonstrating that a joint trial was so manifestly prejudicial as to outweigh the concern for judicial economy. State v. Hoffman, 116 Wn.2d 51, 74, 804 P.2d 577 (1991). To meet this burden, the defendant must show specific prejudice. State v. Jones, 93 Wn. App. 166, 171, 968 P.2d 888 (1998).

Specific prejudice may result if the codefendants offer "antagonistic defenses conflicting to the point of being irreconcilable and mutually exclusive." Id. The existence of mutually antagonistic defenses is not alone sufficient to compel separate trials. Hoffman, 116 Wn.2d at 74. Rather, it must be demonstrated that the conflict is so prejudicial that defenses are irreconcilable, and

the jury will unjustifiably infer that this conflict alone demonstrates that all are guilty. Id. The burden is on a moving party to come forward with sufficient facts to warrant the exercise of discretion in his or her favor. Id.

Bruce argues that he was prejudiced here, because his defense and Vik's defenses were irreconcilable and mutually exclusive. Bruce's defense was that the Jeep had broken down after he had attended a nearby party. A witness called by Bruce, Taylor Nemra, testified that she had been at a party the evening of September 26, 2012. She stated that she arrived at the barbecue around 7:00 p.m. She also stated that Bruce had arrived at the party "probably within the same hour" that she had arrived, and did not leave until after 2:00 a.m. But, Vik testified that Bruce and Blunt had come over to Vik's house the night of September 26, 2012. Vik read a prior statement that claimed that Blunt and Bruce had stopped by his house between 8:00 p.m. and 9:00 p.m. that night.

However, during his testimony, Vik could not recall the specifics of that visit beyond what he had written in his prior statement. Nemra's recollection about the timeline of that night was similarly vague. She noted that, while Bruce "probably" showed up within the same hour as her, "I can't recall exact time honestly." And, her own statement that she arrived around 7:00 p.m. "give or take," was just a "rough estimate."

Nemra's and Vik's respective testimony do not give a concrete narrative for a timeline of the night. But, we cannot say that the trial court abused its discretion in determining that these incomplete recollections gave sufficient room such that

both Nemra's and Vik's accounts could be believed. Belief in one witness's testimony did not require complete disbelief of the other.

III. Comment on Evidence

Bruce also argues that the trial court's jury instructions amounted to a judicial comment on the evidence. He assigns error to an instruction that stated, "A person who is an accomplice in the commission of a crime is guilty of that crime whether present at the scene or not." (Emphasis added.) Bruce concedes that this is the language offered by 11 Washington Practice: Washington Pattern Jury Instructions: Criminial 10.51, at 234 (4th ed. 2016), but he argues that in this particular case, the "whether present or not" language singled out Bruce. He contends this is so, because his codefendants were walking around near the scene, while Bruce was lying down inside of a vehicle, and the instruction turned this exculpatory fact against Bruce.

Article IV, section 16 of the Washington State Constitution provides, "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." This provision prohibits a judge from "conveying to the jury his or her personal attitudes toward the merits of the case" or instructing a jury that "matters of fact have been established as a matter of law." State v. Becker, 132 Wn.2d 54, 64, 935 P.2d 1321 (1997). We review jury instructions de novo. State v. Levy, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006)

This pattern instruction did not amount to a comment on the evidence by singling out Bruce.[2] Bruce was found in his Jeep containing the victim's property near to the scene of the crime—roughly 50 yards away. And, to the extent he was not on the property when found, he was not singled out by the instruction. Codefendant Blunt was not on the residence property when police first approached him, and the State's closing argument acknowledged that it had no direct evidence of Blunt breaking and entering the residence as part of a burglary. The instruction therefore did not amount to a judicial comment on the evidence.

We affirm.[3]

WE CONCUR:

Appelwick, J

Trickey, ACJ

Dwyer, J

---

[2] Bruce did not make this argument below. But, because the Washington constitution expressly prohibits any judicial comment on the evidence, a claimed error based upon such a comment involves a manifest constitutional error that may be challenged for the first time on appeal. State v. Besabe, 166 Wn. App. 872, 880, 271 P.3d 387 (2012).

[3] Bruce asks that appellate costs not be imposed, because the trial court found Bruce indigent for the purposes of appeal. State does not contest Bruce's indigency in its brief. "Unless a trial court finds a defendant's condition has improved, we presume the defendant continues to be indigent." State v. Caver, 195 Wn. App. 774, 785, 381 P.3d 191 (2016), review denied, 187 Wn.2d 1013 (2017). The State is therefore not entitled to costs.