# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49847-2-II |
| Respondent, | |
| v. | |
| SCOTT ANDREW MENDEZ, | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, C.J. – Scott Mendez appeals his conviction of felony violation of a no contact order. We hold that (1) the trial court did not abuse its discretion in granting trial continuances based on the prosecutor's unavailability and the investigating officer's unavailability and in selecting the new trial dates based on judicial availability, and (2) the trial court erred in allowing Mendez to be placed in restraints during the bench trial, but the error was harmless. Accordingly, we affirm Mendez's conviction.

## FACTS

A no contact order was in effect that prohibited Mendez from contacting or going within 500 feet of his former girlfriend. He was arrested after an officer saw him standing a few feet from the door to his former girlfriend's apartment.

*Multiple Continuances*

On April 13, 2016, the State charged Mendez with felony violation of a no contact order. Mendez's trial originally was scheduled for June 20. He remained in custody pending the trial.

On June 15, the State requested a short continuance. The assigned prosecutor explained that he had not been present when the trial date was set and that he was scheduled to be out of state on the trial date. Defense counsel informed the court that Mendez objected to the continuance, but counsel conceded that a continuance would not cause prejudice. Defense counsel also stated that he needed time to discuss a new plea offer with Mendez. Defense counsel requested a trial date of July 11, stating that was the first date he would be available for trial. The trial court found that there was good cause for the continuance and that the continuance would not prejudice the presentation of Mendez's case. The court rescheduled the trial for July 11.

On July 6, defense counsel requested a continuance because he was scheduled to start a trial in another county on July 11 that would last the rest of the month. Counsel stated that Mendez was not agreeable to the continuance and wanted the case to proceed to trial as quickly as possible. The State did not object and suggested a new trial date of August 1 or 8, and defense counsel requested August 8 because he would be out of town on August 1. The trial court found good cause for the continuance and rescheduled the trial for August 8.

On July 26, the State filed a motion for a continuance based on the unavailability of the investigating officer from August 8 through September 10. The State asserted that the investigating officer was a material witness and that his testimony was essential to the State's case. Mendez objected because he already had been in custody for several months. The State proposed a continuance until September 12, but the trial court stated that the week of September 12 was a nonjury trial week. The State then proposed a trial date of September 19.

The trial court noted Mendez's objection and the fact that a continuance would involve more custody time. However, the court agreed that the officer was a material witness and found

that it did not have sufficient information to determine that a continuance would cause prejudice. Therefore, the court granted the continuance and rescheduled the trial for September 19.

On August 4, Mendez, acting pro se, filed a motion to dismiss the charge against him. In his motion, Mendez argued that the repeated continuances were a violation of his Fifth Amendment due process rights and his Sixth Amendment right to a speedy trial. There is no indication in the record that the trial court addressed this motion.

On September 16, defense counsel filed a declaration stating that he was now unavailable on September 19 because a trial in another county had been delayed until that date. He requested a two-day continuance until September 21. The trial court noted that defense counsel had asked for a short continuance, but stated that there were no judges available for trial on September 21. The court found that Mendez's defense would be prejudiced by being required to proceed to trial without defense counsel and that a continuance was necessary due to unforeseen circumstances outside the control of the court or the parties. The court continued the trial until September 26.

On September 19, Mendez filed a motion to dismiss based on alleged misconduct of the State in requesting a continuance of the August 8 trial date due to the unavailability of the investigating officer. Mendez claimed that personnel records showed that the officer was only on vacation from August 13 through August 26. Defense counsel withdrew this motion at trial.

*Trial and Physical Restraints*

After Mendez waived his right to a jury, the bench trial commenced on September 26. Mendez was placed in physical restraints during the trial. He had restraints on his wrists that attached to a chain around his waist. He also had shackles on his ankles connected by a chain. Mendez also was wearing jail clothing. The trial court noted that defendants who were in custody typically appeared the same as Mendez for proceedings before the court.

3

Mendez requested to have one hand free during the trial to be able to write notes. The trial court found that having one hand free would not pose a security risk and would allow Mendez to fully participate in the trial. The court granted Mendez the free use of his right hand and a writing implement and paper. But the court did not address whether physical restraints were necessary at all.

At trial, the arresting officer testified that Mendez was within 500 feet of the apartment of the former girlfriend, and that the former girlfriend was the subject of a protective order. The manager of the apartment complex testified that the former girlfriend lived in the apartment at the time. And law enforcement testified that although Mendez did not actually contact his former girlfriend, she was in the area when he was arrested.

The trial court found Mendez guilty of felony violation of a no contact order. Mendez appeals his conviction.

## ANALYSIS

A. TIME FOR TRIAL VIOLATION

Mendez argues that the trial court violated CrR 3.3 – the time for trial rule – by granting multiple continuances over his objections. He claims that the trial court erred by granting continuances based on the prosecutor's unavailability, the investigating officer's unavailability, and judicial unavailability. We disagree.

1. CrR 3.3 Provisions

CrR 3.3 governs a defendant's right to be brought to trial in a timely manner. CrR 3.3(b)(1) and (c)(1) provide that a defendant who is detained in jail must be brought to trial within 60 days of arraignment. The purpose of this rule is to protect a defendant's constitutional right to a speedy trial. *State v. Kenyon*, 167 Wn.2d 130, 136, 216 P.3d 1024 (2009). A charge

4

not brought to trial within the time limits of CrR 3.3 generally must be dismissed with prejudice. CrR 3.3(h).

CrR 3.3(e) provides that certain time periods are excluded in computing the time for trial. These excludable time periods include continuances the court grants under CrR 3.3(f) and "[u]navoidable or unforeseen circumstances affecting the time for trial beyond the control of the court or of the parties." CrR 3.3(e)(3); CrR 3.3(e)(8). Under CrR 3.3(f), the trial court may continue the trial date on motion of the court or a party "when such continuance is required in the administration of justice and the defendant will not be prejudiced in the presentation of his or her defense." CrR 3.3(f)(2). In granting a motion for a continuance, "[t]he court must state on the record or in writing the reasons for the continuance." CrR 3.3(f)(2).

We review an alleged violation of the time for trial rule de novo. *Kenyon*, 167 Wn.2d at 135. However, we review the trial court's decision to grant a continuance under CrR 3.3(f)(2) for an abuse of discretion. *See id.* In addition, once a continuance is properly granted the trial court has discretion in selecting the new trial date. *See State v. Flinn*, 154 Wn.2d 193, 200-01, 110 P.3d 748 (2005). A court abuses its discretion if its decision is manifestly unreasonable, based on untenable grounds, or based on untenable reasons. *Kenyon*, 167 Wn.2d at 135.

2.  Prosecutor Unavailability

Mendez argues that the court abused its discretion by granting a continuance from June 20, 2016 to July 11 because the assigned prosecutor was unavailable on the original trial date. We disagree.

Under CrR 3.3(f), "[s]cheduling conflicts may be considered in granting continuances." *Flinn*, 154 Wn.2d at 200. Specifically, "[a] prosecutor's reasonably scheduled vacation is a valid basis for granting a continuance" under CrR 3.2(f). *State v. Heredia-Juarez*, 119 Wn. App. 150,

153, 79 P.3d 987 (2003). The State has some responsibility to consider reassigning the vacationing prosecutor's case to a new prosecutor. *Id.* at 154. However, "there is not a per se requirement of reassignment when a prosecutor becomes unavailable." *Id.* at 155.

In *Heredia-Juarez*, the court stated that the trial court should consider all relevant factors in deciding whether to grant a continuance. *Id.* at 155. The court identified several factors that could be considered in deciding to grant a continuance for a prosecutor's previously scheduled vacation: (1) whether the conflict was created by a previous continuance that the defendant had requested; (2) the complexity of the case; (3) the need for the prosecutor to build rapport with the victims, particularly in cases involving serious crimes; and (4) as with all continuances, whether the defendant would be substantially prejudiced by a delay. *Id.* at 155-56.

Mendez argues that based on the factors discussed in *Heredia-Juarez*, the State had an obligation under the circumstances to assign the case to a different prosecutor in order to protect his time for trial rights. He emphasizes that although the State had been aware of the trial date for several weeks, it did not move for a continuance until five days before trial. And Mendez notes that the case was simple and straightforward and there was no need for the prosecutor to establish rapport with victims or witnesses.

The record is unclear whether the prosecutor acted unreasonably in not moving for a continuance until five days before the scheduled trial date. It is unknown when the prosecutor knew about the trial date and when he knew he would be out of state during the week of trial. In addition, there may be circumstances where it is reasonable to delay moving for a continuance because of other considerations.

Further, there was no indication that a continuance would prejudice Mendez's presentation of the case. Defense counsel also stated that he needed time to discuss a plea offer with Mendez. And the delay was only three weeks.

Given the trial court's broad discretion in addressing continuances and the absence of any prejudice, we hold that the trial court did not abuse its discretion in granting a continuance based on the prosecutor's unavailability.

3. Witness Unavailability

Mendez argues that the trial court abused its discretion by granting a continuance from August 8 to September 19 because of the investigating officer's unavailability. We disagree.

The unavailability of a material witness may be a proper basis for continuing a trial under CrR 3.3(f) if (1) the witness is unavailable for a valid reason, (2) the witness will become available in a reasonable time, and (3) there is no substantial prejudice to the defendant. *State v. Jones*, 117 Wn. App. 721, 729, 72 P.3d 1110 (2003). A law enforcement officer's previously scheduled vacation is a valid reason for the officer's unavailability. *State v. Grilley*, 67 Wn. App. 795, 799, 840 P.2d 903 (1992).

Here, the investigating officer was unavailable for a previously scheduled vacation. The prosecutor told the trial court that the officer would become available in five weeks, which is not a completely unreasonable time. And although Mendez objected to the continuance, the trial court did not have sufficient information to find that the continuance would be prejudicial to the presentation of his defense.

Mendez argues that according to personnel records, the officer was only on vacation from August 13 through August 26. He claims that the officer may have been able to testify before leaving for vacation if the trial started on August 8 and would have been available before

7

September 10, the date the State represented that he would return from vacation. However, these allegations are nothing more than speculation and are not supported by the record. Further, at trial Mendez withdrew his motion based on similar allegations.

Accordingly, we hold that the trial court did not abuse its discretion by granting a continuance based on the witness's unavailability.

4.    Judicial Unavailability

Mendez argues that the trial court abused its discretion by scheduling the trial for September 19 rather than September 12 and for September 26 rather than September 21 because of judicial unavailability. We disagree.

Court unavailability or court congestion generally does not constitute good cause for a continuance under CrR 3.3. *Kenyon*, 167 Wn.2d at 137. However, a trial court can grant a continuance based on court congestion if the court makes a record of "the unavailability of judges and courtrooms and of the availability of judges pro tempore." *Id.* As Mendez points out, the trial court made no such record here.

However, here the trial court did not *grant* either challenged continuance based on court or judicial unavailability. The court granted a continuance of the August 8 trial date because of witness unavailability and of the September 19 trial date because of defense counsel's unavailability.

After the court granted the continuances, judicial availability was a factor in selecting the new trial date. But once a continuance is granted for good cause, we do not "second-guess the trial judge's discretion in placing the trial on the court's calendar." *Flinn*, 154 Wn.2d at 201.

Accordingly, we hold that the trial court did not abuse its discretion by considering judicial availability in selecting the rescheduled trial dates.

B.      PLACING PHYSICAL RESTRAINTS ON DEFENDANT

Mendez argues that the trial court violated his constitutional right to a fair trial by allowing him to be placed in physical restraints during trial.[1]  We hold that the trial court erred in allowing Mendez to be placed in restraints, but that the error was harmless.

1.      Legal Principles

Defendants in criminal cases have the right to appear at trial " 'free from all bonds or shackles, except in extraordinary circumstances.' "  *State v. Caver*, 195 Wn. App. 774, 780, 381 P.3d 191 (2016), *review denied*, 187 Wn.2d 1013 (2017) (quoting *State v. Finch*, 137 Wn.2d 792, 842, 975 P.2d 967 (1999)).  This right to appear without restraints is designed to preserve a defendant's right to a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution and article I, section 22 of the Washington Constitution.  *Caver*, 195 Wn. App. at 780.  Appearing at trial in restraints may unfairly prejudice the jury, thereby infringing on the defendant's presumption of innocence.  *Id.*

Washington courts have "universally held that restraints should 'be used only when necessary to prevent injury to those in the courtroom, to prevent disorderly conduct at trial, or to prevent an escape.' "  *Finch*, 137 Wn.2d at 846 (quoting *State v. Hartzog*, 96 Wn.2d 383, 398, 635 P.2d 694 (1981)).  Even if there are security concerns, the court must "balance the need for a secure courtroom with the defendant's presumption of innocence, the defendant's ability to assist counsel, the right to testify on one's own behalf, and the dignity of the judicial process."  *State v.*

---

[1] Mendez also argues that forcing him to wear jail clothing during trial violated his constitutional rights, but does not provide any analysis or authority on this issue.  In general, the analysis is similar for physical restraints and jail clothing.  *State v. Caver*, 195 Wn. App. 774, 780, 381 P.3d 191 (2016).

*Walker*, 185 Wn. App. 790, 796, 344 P.3d 227 (2015).  And the trial court should authorize the use of physical restraints only as a last resort.  *Finch*, 137 Wn.2d at 850.

The trial court must hold a hearing and make a determination on the record that restraints are necessary during trial to ensure the decorum and security of the courtroom.  *Walker*, 185 Wn. App. at 800.  The Supreme Court has identified several factors that the trial court should consider when deciding whether a defendant should be restrained during trial:

> [T]he seriousness of the present charge against the defendant; defendant's temperament and character; his age and physical attributes; his past record; past escapes or attempted escapes, and evidence of a present plan to escape; threats to harm others or cause a disturbance; self-destructive tendencies; the risk of mob violence or of attempted revenge by others; the possibility of rescue by other offenders still at large; the size and mood of the audience; the nature and physical security of the courtroom; and the adequacy and availability of alternative remedies.

*State v. Hutchinson*, 135 Wn.2d 863, 887–88, 959 P.2d 1061 (1998) (quoting *Hartzog*, 96 Wn.2d at 400).

However, in *Finch* the court emphasized that the existence of one of more of these factors does not necessarily mean that the defendant should be restrained absent compelling circumstances that require restraints for courtroom security.  137 Wn.2d at 850.  "The trial court must base its decision to physically restrain a defendant on evidence which indicates that the defendant poses an imminent risk of escape, that the defendant intends to injure someone in the courtroom, or that the defendant cannot behave in an orderly manner while in the courtroom." *Id.*

The trial court has discretion in determining whether a defendant should be restrained. *Caver*, 195 Wn. App. at 780.  However, that discretion must be founded upon a factual basis set forth in the record.  *Walker*, 185 Wn. App. at 800.  A broad general policy of imposing physical restraints upon defendants because they may be "potentially dangerous" is a failure to exercise

10

discretion. *Finch*, 137 Wn.2d at 846. In addition, the trial court may abuse its discretion if it orders the defendant restrained during trial based solely on a policy of the prison officials. *Walker*, 185 Wn. App. at 796-97.

> 2. Harmless Error

A defendant may have a constitutional right to appear without physical restraints in certain proceedings before the court even though a jury is not present. *See Walker*, 185 Wn. App. at 797-802 (discussing the right but declining to hold that it applied at a sentencing hearing). But allowing a defendant to appear in physical restraints in a nonjury setting requires a lesser showing of necessity. *Id.* at 799.

We do not decide whether a defendant has the right to appear without restraints in a bench trial because the State concedes that the trial court erred in failing to make a record regarding the factors supporting placement of restraints, and the parties do not address this issue. Instead, we focus on harmless error.

A claim of unconstitutional physical restraints is subject to a harmless error analysis. *State v. Clark*, 143 Wn.2d 731, 775, 24 P.3d 1006 (2001). Under this analysis, the State bears the burden of showing the error was harmless beyond a reasonable doubt or that the evidence of guilt is so overwhelming that a jury could reach no rational conclusion other than guilt. *Id.* at 775-76. The question is whether the restraints "had a substantial or injurious effect or influence" on the verdict. *Hutchinson*, 135 Wn.2d at 888.

In a jury trial, improperly restraining a defendant is harmless error if the jury cannot see the restraints. *Id.* The question here is whether improperly placing a defendant in restraints during a bench trial, where the restraints are visible to the trial court, is harmless.

Only one Washington case has addressed whether improper restraints on a defendant during a bench trial constitutes harmless error. In *State v. E.J.Y.*, Division One of this court found harmless error. 113 Wn. App. 940, 952, 55 P.3d 673 (2002). The court stated:

> [Improper placement of restraints] does not require reversal unless it is shown that the use of restraints substantially affected the trial court's fact finding. No such showing has been made. *This was a proceeding without a jury, which greatly reduces the likelihood of prejudice.* We conclude that the error was harmless.

*Id.* (emphasis added).

Here, there is no indication that Mendez's appearance at trial in physical restraints substantially affected the trial court's verdict. The trial court certainly knew that Mendez was in custody. And the court noted that Mendez's appearance was similar to the way defendants normally appeared in proceedings before the court. In-custody defendants routinely appear in restraints in a variety of court proceedings. There is no reason to believe that the trial court was influenced in any way by the presence of the restraints.

In addition, the evidence against Mendez was compelling. The State presented testimony from the arresting officer that Mendez was within 500 feet of the apartment of the subject of a protective order. And the State presented evidence that the subject of the order lived in the apartment at the time.

Accordingly, even if the trial court erred in allowing Mendez to appear in physical restraints, the error was harmless.

CONCLUSION

We affirm Mendez's conviction of felony violation of a no contact order.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, C.J.

We concur:

LEE, J.

MELNICK, J.